## BRAST v. WINDING GULF COLLIERY CO.
### No. 4189.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1938.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and 'Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for appellant.

E. L. Greever, of Tazewell, Va. (Chas. P. Gillespie, of Tazewell, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action at law instituted in October, 1931, in the District Court of the United States for the Northern District of West Virginia, by the appellee, Winding Gulf Colliery Company, a corporation, here referred to as the plaintiff, against Edwin A. Brast, individually and as collector of

internal revenue for the collection district of West Virginia, here referred to as the defendant. The object of the suit was to recover excess corporation income and profits taxes for the years 1919, 1920, and 1926. (The defendant, however, does not question the recovery for the year 1926, only the recovery for the years 1919 and 1920 are involved). The defendant filed a special plea to which the plaintiff replied specially, and in March, 1933, a stipulation was filed submitting the case to the judge, in lieu of a jury, to decide and determine all issues of fact, as well as law. A hearing was had at which a number of witnesses were examined. On February 21, 1936, the trial judge filed a written opinion finding for the plaintiff, 13 F.Supp. 743, and on May 28, 1936, an order was entered giving judgment for the plaintiff for excess taxes paid for the years 1919 and 1920, in the amount of $27,224.34, with interest. From this action of the court below this appeal was brought.

There is no dispute as to the facts as stipulated and found by the court. The plaintiff is a West Virginia corporation owning and operating coal mines in the state of West Virginia and the defendant was, at the time the action was instituted, collector of internal revenue for the collection district of West Virginia.

The plaintiff duly filed its returns and amended returns of corporation income and profits taxes for the years 1919 and 1920, and the Commissioner of Internal Revenue, as a result of an audit of the returns, on August 24, 1925, made a determination that there was a deficiency for the year 1919 in the sum of $18,400.10 and for the year 1920, in the sum of $36,847.-76. The Commissioner in making his determination disallowed as expenses certain items for plant equipment and structures which the taxpayer had treated as expenses in its amended returns.

In September, 1925, the plaintiff filed a petition before the United States Board of Tax Appeals, asking for a review of the determination of the deficiencies by the Commissioner, and the case was set down for hearing before the Board of Tax Appeals on December 8, 1926. Before the case was reached the Board of Tax Appeals decided the same question, involved in the petition of the plaintiff, in two cases, Appeal of Union Collieries Company, 3 B.T.A. 540, and Appeal of Kirk Coal Company, 3 B.T.A. 755. After some correspondence a conference was held between the attorneys representing the taxpayer and the government, as a result of which the following stipulation was entered into:

"It is hereby stipulated and agreed by and between the above-named parties, by their respective counsel, that the deficiencies for the years 1919 and 1920 are $14,-225.84 and $29,024.84, respectively, and that a computation of the tax for the year 1921 is as follows:

Correct tax liability............ $2,362.35
Tax assessed (paid)............ 3,631.00

Overpayment to be refunded.... $1,268.65

"It is further stipulated and agreed that the Board may enter an order of redetermination accordingly.

"E. C. Conley,
"Attorney for Petitioner.
"A. W. Gregg,
"General Counsel, Bureau of Internal Revenue."

On December 8, 1926, the Board of Tax Appeals entered its final order of redetermination as agreed on in the stipulation. No appeal was taken from this order, and the plaintiff, in accordance with the order, paid the additional taxes for the years 1919 and 1920. On November 8, and 18, 1929, respectively, the plaintiff filed a claim with the Commissioner for a refund of the additional taxes thus paid for the years 1919 and 1920, which claim was rejected by the Commissioner on a schedule dated March 7, 1930, and, as stated above, in October, 1931, the plaintiff instituted this action.

No question is raised on this appeal as to the correctness of the finding of the court below on the merits of the case, the only question presented by the defendant being whether the plaintiff was estopped from maintaining this action for the refund of taxes under the stipulation entered into and by the order of the Board of Tax Appeal based on said stipulation.

The contention of the defendant is that the plaintiff was estopped by the stipulation entered into from maintaining this action; that the stipulation was in the nature of a compromise and settlement; and that the order of the Board of Tax Appeals, entered pursuant to the stipulation, was a final adjudication of the matter here in controversy.

The plaintiff contends that the stipulation was entered into through a mistake of law; that it was in no sense a compromise, for the reason that the taxpayer received no consideration; and that the court below in the exercise of a sound discretion had a right to relieve the plaintiff from the stipulation.

The trial judge sustained the contention of the plaintiff, and we think properly did so. After the plaintiff had filed its petition before the Board of Tax Appeals for a redetermination of the Commissioner's findings of deficiencies, the Board decided the precise point raised contrary to the contention of the taxpayer, and it is apparent from the correspondence and the evidence given below that it was the intention of the taxpayer to submit to the finding of the Board. Afterwards, this court in the case of Marsh Fork Coal Company v. Lucas, 4 Cir., 42 F.2d 83, decided the same questions against the contention of the Commissioner, reversing the Board of Tax Appeals in its decisions under which the stipulation here was made. The decision in the Marsh Fork Case has been accepted as the established law. Under these circumstances, the stipulation entered into was evidently an agreement made under a mistake of law and did not partake of the nature of a compromise. The plaintiff by the stipulation merely agreed to pay what it was not, under the law as finally determined, required to pay, and, when it discovered its mistake, had the unquestioned right to ask that it be relieved.

■ Had the stipulation in question been in the nature of a compromise, it was essential to its validity that it have the consent of the Secretary of the Treasury. U.S.Rev.Stat. § 3229, 26 U.S.C.A. § 1661. There is no contention that this consent was obtained. The government gave nothing to the plaintiff in the way of compromise, and the plaintiff received no benefit in the settlement of its taxes for the years 1919 and 1920 by reason of the stipulation. It simply paid what the government claimed. Under these circumstances it is well settled "that trial courts may, in the exercise of a sound judicial discretion and in the furtherance of justice, relieve parties from stipulations which they have entered into in the course of judicial proceedings, and that on appeal the determination of the trial court will not ordinarily be interferred with, except where a manifest abuse of discretion is disclosed." 25 R.C.L. pp. 1099, 1100.

Chief Justice Marshall early laid down this principle, in the case of The Hiram, 1 Wheat. 440, 444, 14 U.S. 440, 4 L.Ed. 131, where he said: "But this court is also of opinion that if the agreement was made under a clear mistake, the claimants ought to be relieved from it, where it could be done without injury to the opposite party. If a judgment be confessed under a clear mistake, a court of law will set that judgment aside."

■ Where facts subsequently developed show, with respect to a particular matter, that a stipulation was inadvertently signed, the party may be relieved where there is no prejudice to the opposite party. Carnegie Steel Co. v. Cambria Iron Company, 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968.

"If we have any power at all to reverse an order of the District Court relieving a party from a stipulation, we see no reason to do so in this instance. Such stipulations are not as irrevocable as other contracts, and courts will not hold the parties to them when they are given inadvertently and are oppressive, and when the other side will suffer no unfair prejudice if they are set aside. [Citations.]" Dalton v. Bowers, 2 Cir., 53 F.2d 373, 374.

In Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 132, 73 L.Ed. 379, is found a discussion of this principle as applied to a tax case. There, after a thorough discussion, the court said: "We therefore conclude that the Mills was not precluded by the settlement from recovering any portion of the tax to which it may otherwise have been entitled."

In the case of George S. Colton Elastic Web Company v. White, D.C., 16 F.Supp. 726, will also be found a discussion of this question, and the holding in that case was in accord with the Botany Mills Case, supra.

The case of Backus v. United States, Ct.Cl., 59 F.2d 242, certiorari denied 288 U.S. 610, 53 S.Ct. 402, 77 L.Ed. 984, is relied upon by the defendant to support his contention, but an examination of that case shows that it is distinguishable from the case here. This same distinction was pointed out in the Colton Elastic Web Company Case, supra. In the Backus Case a compromise was involved and the consent of the Secretary of the Treasury to the set-

182

tlement was expressly received. The other cases relied upon by the defendant were either cases of compromise where the party entering into the stipulation received some benefit or cases where the relief from the stipulation would prejudice the opposite party. In the case of White Oak Coal Company v. United States, 4 Cir., 15 F.2d 474, also relied upon by the defendant, the coal company had the right to pursue one of two courses and, having decided which course it would pursue, this court held that it was bound by that decision. This case is not in point here.

▮ The government collected taxes which it had no right to collect. The plaintiff, under a mistake of law, believing the government had a right to collect these taxes, entered into the stipulation which was the basis of the order entered by the Board of Tax Appeals. When this mistake was discovered, the plaintiff applied to the Commissioner of Internal Revenue for a refund and, upon a refusal, brought this action. The trial court in the exercise of what we hold to be a sound discretion, and in the furtherance of justice, relieved the plaintiff from the stipulation. By this action the government suffered no prejudice. It was only required to refund the sum it had collected, which it had no right to collect. There was no error in the action of the judge below, and the judgment is accordingly affirmed.

▮ At the conclusion of the oral argument before this court the attorneys for the appellant presented a written motion asking, in the event the decision was affirmed, that the excess cost of printing the record, caused by the inclusion, at the instance of attorneys for the appellee, of immaterial and irrelevant matter not necessary to a decision of the issue raised on this appeal, be assessed against the appellee. The appellee filed a written answer to this motion.

Upon consideration of the motion and answer we find that the record was a needlessly long one of over 500 pages, when it should have consisted of not more than 200 pages. We also find that the attorneys for both parties were to blame for this inexcusable situation. The attorneys for the appellee were at fault in causing, by objections before the judge below, the inclusion of a vast amount of useless matter in the record. The attorneys for the appel-

lant were at fault for not bringing the matter to the attention of this court before the record was printed and the unnecessary expense incurred.

In The Nichiyo Maru, 4 Cir., 89 F.2d 539, we warned attorneys practicing in this court that a failure to comply with subsection 6(a) of rule 14, of this court, requiring the elimination from records of immaterial matter, testimony, etc., would be severely dealt with. We find the rule to have been flagrantly and inexcusably violated in this case. The clerk of the court is directed to assess $1,000 of the cost of printing the record herein against the prevailing party, the appellee. This is approximately one-half of the unnecessary cost incurred as a result of the violation of the rule.

Affirmed.