420 S.E.2d 295

**CUMBERLAND CHEVROLET OLDSMOBILE CADILLAC, INC., a West Virginia Corporation, Plaintiff Below, Appellant,**

v.

**GENERAL MOTORS CORPORATION, a Delaware Corporation, Doing Business in the State of West Virginia, Defendant Below, Appellee.**

No. 20737.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided July 23, 1992.

---

J.W. Feuchtenberger, Stone, McGee, Feuchtenberger & Barringer, Bluefield, for appellant.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, James A. Mollica, Jr., Michael H. Syme, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellee.

PER CURIAM:

The appellant, Cumberland Chevrolet Oldsmobile Cadillac, Inc., appeals from the April 25, 1991 order of the Circuit Court of Mercer County granting summary judgment in favor of the appellee, General Motors Corporation. The appellant had sought a judgment in its favor for damages for breach of contract and bad faith dealings by the appellee. We affirm the ruling of the trial court.

Both parties agree that the facts in this case are not in dispute. On February 5, 1988, the appellant ("Cumberland") and the appellee ("General Motors") entered into a contractual agreement entitled "Dealer Sales and Service Agreement" ("Agreement"). The Agreement provided, among other things, that Cumberland would operate as a retail dealer and repair service for motor vehicles manufactured by General Motors. The Agreement also provided that Cumberland would purchase its inventory and parts from General Motors, and perform warranty services as well.

The Agreement included a section entitled "Termination Assistance." That section provided, that upon the termination of the Agreement, General Motors would repurchase certain tools and parts from Cumberland and General Motors would have the right to deduct any amount owed to it by Cumberland from the repurchase price. This repurchase provision was subject to a subsequent provision of the Agreement which gave General Motors the right to deduct any amount owed by Cumberland to General Motors in the event that any "monies or accounts" became due from General Motors to Cumberland. The Agreement also stated, that in the event of the repurchase of the tools and parts by General Motors, Cumberland would provide those items with "good and marketable title," and satisfy any liens and encumbrances on those items prior to their delivery to General Motors. The Agreement was unsecured.

On February 10, 1988 and again on May 4, 1989, Cumberland executed security agreements in favor of General Motors Acceptance Corporation ("GMAC"), a separate entity from General Motors. Said security agreements provided that GMAC would extend credit to Cumberland in return for a secured interest in certain collateral, including tools and parts. Both security agreements were recorded by the clerk of the McDowell County Commission in Welch. Unlike the agreement between General Motors and Cumberland, the individual officers of Cumberland were guarantors of the security interest in favor of GMAC.

In August, 1989, Cumberland ceased business operations and terminated the Agreement with General Motors. Pursuant to the Agreement, Cumberland requested that General Motors repurchase the tools and parts in its possession. Cumberland informed General Motors of the liens held by GMAC prior to the repurchase.

General Motors did not transfer the repurchase price ($21,252.00) to GMAC. Instead, it deducted (pursuant to the Agreement) the repurchase price from a debt Cumberland owed General Motors. Cumberland thereafter filed this action in the

Circuit Court of Mercer County seeking to have the repurchase price transferred to GMAC.

By order dated April 25, 1991, the trial court granted General Motors' motion for summary judgment. We note that the trial court made neither findings of fact nor conclusions of law, and we therefore have no way of discerning the rationale behind the trial court's decision. Although such a situation creates difficulties upon appellate review, we nonetheless affirm the trial court's order of summary judgment in this case.

■ Cumberland argues that, by virtue of the security agreements between Cumberland and GMAC, General Motors must pay the repurchase price of the tools and parts to GMAC *pursuant to GMAC's interest.* General Motors argues that, pursuant to Rule 17(a) of the *W.Va.R.Civ.P.*,[1] Cumberland has no interest in this litigation and therefore has no standing or cause of action. We note that although Cumberland seeks to focus on the requirements of secured transaction law, the more fundamental concern in this case is Cumberland's right to pursue this action.

In its complaint, Cumberland alleges a breach of contract on the part of General Motors. It is clear from the facts of this case that General Motors has not breached any provision of the contract between itself and Cumberland. General Motors, although cognizant of the security agreements between Cumberland and GMAC, was not a party to them. It is clear that the security agreements were in favor of GMAC, not Cumberland, and although GMAC certainly would have an interest in the proceeds of the sale of the tools and parts, it is also clear that Cumberland would not.[2]

In syllabus point 2 of *Burns v. Cities Service Company*, 158 W.Va. 1059, 217 S.E.2d 56 (1975), we stated: "A party is entitled to prosecute a civil action as the real party in interest when he establishes an actual and justiciable interest in the subject matter of the litigation." In *Burns* we held that a party to a contract who had assigned all of his interest in the proceeds of the contract to another could not sue for damages for breach of contract over those proceeds because he had assigned all of his interest in the proceeds (the subject matter of that litigation) to another. The question we are thus faced with is whether Cumberland has established "an actual and justiciable interest in the subject matter of [this] litigation."

The subject matter of this litigation is the $21,252.00 repurchase price of the tools and parts credited by General Motors to past debts of Cumberland. Any interest of Cumberland in the repurchase price arises under its contract with General Motors, not under the security agreement with GMAC. Cumberland seeks, on the one hand, to use its interest in the contract with General Motors to provide for the repurchase of the tools and parts, but then, on the other hand, relies on *GMAC's interest* in the security agreements to contend that the contractual provisions allowing General Motors to apply the repurchase price to debts owed General Motors by Cumberland are superseded. Cumberland cites no interest of its own, only the interest it has assigned to GMAC. Cumberland is not harmed in any way by General Motors' actions—it would, in any event, be forced to give the money to either General Motors or GMAC. Cumberland therefore has no interest whatsoever in the repurchase price.[3]

---

1. Rule 17(a) *W.Va.R.Civ.P.* states, in pertinent part: "Every action shall be prosecuted in the name of the real party in interest."

2. Nothing in this opinion should be construed as suggesting that GMAC has no interest in the sale of the tools and parts, nor should it be construed as suggesting the individual officers of Cumberland, in their individual capacities, have no interest in said sale. The individual officers of Cumberland, who were neither par-

ties to nor liable for the contract between Cumberland and General Motors, are not parties to this action and we therefore decline to address their standing to maintain an action on this issue.

3. Again, we reiterate that although harm may come to the individual officers of Cumberland in their individual capacities because of their obligation to GMAC by virtue of the security agreement, those officers are not parties to this

It is clear, then, that Cumberland has no "actual or justiciable" interest in the subject matter of this litigation, and therefore lacks standing to proceed. Although the trial court made no findings of fact or conclusions of law, this issue was raised before it by General Motors and it certainly supports the order granting summary judgment.[4] All other issues raised before this court are therefore moot.

Based upon the foregoing reasons, the order of the Circuit Court of Mercer County is affirmed.

Affirmed.

action and we decline to address their rights to litigate this issue. Furthermore, neither party has raised the issue of the individual officers' standing in these circumstances.

4. We note that even if the reasoning of a trial court is in error (there is nothing to suggest what the reasoning was in this case, or upon which ground the trial court granted the motion) we are not bound by a trial court's erroneous reasoning. As we stated in *Dunning v. Barlow & Wisler, Inc.,* 148 W.Va. 206, 211, 133 S.E.2d 784, 788 (1963): "[I]t is fundamental that an appellate court is not bound by, nor required to give any special weight to, the conclusions of law applied by the trial court ..., it being the duty of the appellate court to determine whether the correct legal principles have been applied."