479 S.E.2d 300

STATE of West Virginia ex rel. AP-
PALACHIAN POWER COMPA-
NY, et al., Petitioners

v.

Honorable A. Andrew MacQUEEN, III,
Judge of the Circuit Court of Kanawha
County, Cleo Abbott, et al., Respondents.

No. 23402.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 10, 1996.

Decided Nov. 14, 1996.

Charles R. McElwee, Joseph Beeson, Robinson & McElwee, Charleston, for Appalachian Power Company, Ohio Power Company, Central Operating Company, Kaiser Aluminum & Chemical Corporation, Ravens-wood Aluminum Corporation and Aroostook Chemical Corporation.

Dennis C. Sauter, A.L. Emch, Jackson & Kelly, Charleston, for the Goodyear Tire & Rubber Company, Bayer Corporation, Potomac Edison Company, West Penn Power Company, Monongahela Power Company and Duquesne Light Company.

Richard C. Polley, Dickie, McCamey & Chilcote, Pittsburgh, Pennsylvania, for Appalachian Power Company, Ohio Power Company and Central Operating Company.

Charles Love, Bowles Rice McDavid Graff & Love, Charleston, for Monsanto Corporation.

Robert H. Sweeney, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Agee, Huntington, for Inco Alloys International, Inc.

David Armstrong, George McGrann, Dickie, McCamey & Chilcote, Wheeling, for PPG Industries, Inc.

Richard Hayhurst, Parkersburg, for FMC Corporation.

Cynthia M. Hutchins, Sharlock Repcheck & Mahler, Pittsburgh, Pennsylvania, for Cyprus Foote Mineral Corporation.

Scott S. Segal, Segal and Davis, Charleston, Stuart Calwell, Calwell & McCormick, Charleston, James H. Rion, Jr., Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, Theodore Goldberg, Goldberg, Persky, Jennings & White, Pittsburgh, Pennsylvania, and Teresa C. Postle, Law Offices of James F. Humphreys, Charleston, for Respondents–Plaintiffs.

RECHT, Justice: [1]

There are currently pending in the Circuit Court of Kanawha County a large number of separate civil actions [2] filed by or on behalf of individuals (hereinafter "plaintiffs") claiming physical impairment resulting from the expo-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. There are a minimum of one thousand separate civil actions on the active docket.

sure to the hazards of asbestos and/or asbestos-containing products.[3]

According to each complaint, the asbestos exposure occurred while the plaintiffs, who are employees of independent contractors, were constructing, repairing, and/or maintaining various facilities owned by each defendant, all of which are located in West Virginia.[4] These cases are collectively known as the Premises Liability Cases, and the defendants are known as the Premises Liability Defendants (hereinafter "petitioners" or "Premises Liability Defendants"). The Premises Liability Cases have been assigned to the Honorable A. Andrew MacQueen, a circuit judge who has many years of experience in presiding over complex cases generally and mass toxic tort litigation specifically.[5]

In an effort to reduce the transaction costs and inefficiencies associated with a case-by-case trial of the Premises Liability Cases, Judge MacQueen formulated a trial management plan (hereinafter "the Plan") whereby all of the Premises Liability Cases would be consolidated for purposes of presenting to a single jury two discrete questions: (1) whether each premises owner failed to maintain a reasonably safe workplace; and (2) if a premises owner did fail to maintain a reasonably safe workplace, during what period or periods of time did the premises owner fail to maintain a reasonably safe workplace.[6]

The Premises Liability Defendants challenge the Plan, contending that the trial court abused its discretion by (1) not conforming to the solicitudes of *State ex rel. Appalachian Power Co. v. Ranson*, 190 W.Va. 429, 438 S.E.2d 609 (1993);[7] and (2) if the criteria for consolidation as developed by *Ranson* were applied, the Plan must fail because there are no common issues of law

---

**3.** Asbestos is a natural fibrous mineral with organic heat resistant and fire retardant properties which have a number of applications, including insulation around cold or hot air or liquid conductors or boilers; noise absorption in wall insulation and acoustic tile ceilings; and the covering of structural steelwork of buildings to guard against fire. The massive "use of asbestos in industrial, commercial and household contexts has exposed millions of people to its insidious dangers." *In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 734–36 (E. & S.D.N.Y.1991), *vacated,* 982 F.2d 721 (2d Cir.1992), *modified sub nom.,* 993 F.2d 7 (2d Cir.1993) (Approving a settlement trust pursuant to an asbestos manufacturer's Chapter 11 bankruptcy plan with respect to a class action suit for personal injury against the asbestos manufacturer. Although the district court's judgment was subsequently vacated, the 271–page opinion written by Judge Weinstein is instructive on the history of asbestos litigation.) *See also* Deborah R. Hensler, Asbestos Litigation in the United States: A Brief Overview, Written Testimony Delivered to the Courts and Judicial Administration Subcommittee, U.S. House Judiciary Committee (Oct. 24, 1991) (commenting that "the asbestos litigation problem is a public health catastrophe, which is itself the legacy of decades of judgments of public and private decisionmakers [sic] who failed to contain or regulate the use of asbestos in the workplace").

**4.** There are 33 facilities owned by 17 defendants. The owners of each facility are the only defendants in this case; neither the plaintiffs' employers nor the manufacturers of asbestos or asbestos containing products are parties to this civil action.

**5.** This record reveals and this Court may properly take judicial notice of Judge MacQueen's extensive background and experience as a preeminent jurist in matters relating to asbestos litigation. *See* W. Va. R. Evid. 201(c).

**6.** The Plan was contained in an order entitled "Order on Common Issues and Consolidation," entered on February 23, 1996.

**7.** In Syllabus Point 2 of *State ex rel. Appalachian Power Co. v. Ranson*, 190 W.Va. 429, 438 S.E.2d 609 (1993), this Court set forth the standard by which a circuit court should consider consolidation issues:

The trial court, when exercising its discretion in deciding consolidation issues under *W.Va.R.Civ.P.* 42(a), should consider the following factors: (1) whether the risks of prejudice and possible confusion outweigh the considerations of judicial dispatch and economy; (2) what the burden would be on the parties, witnesses, and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple lawsuits as compared to the time required to conclude a single lawsuit; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. When the trial court concludes in the exercise of its discretion whether to grant or deny consolidation, it should set forth in its order granting or denying consolidation sufficient grounds to establish for review why consolidation would or would not promote judicial economy and convenience of the parties, and avoid prejudice and confusion.

or fact, and assuming that there are such common issues, the Plan would create such chaos that the resulting prejudice to each Premises Liability Defendant speaks against the implementation of the Plan.

In an effort to prevent the implementation of the Plan, the petitioners filed this writ of prohibition contending that the Plan is a "substantial, clear-cut legal error plainly in contravention of [Rule 42(a), West Virginia Rules of Civil Procedure], which may be resolved independently of any disputed facts and there is a high probability that the trial will be completely reversed if the error is not corrected in advance" so that the writ of prohibition should be granted. *See Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979). We granted the Rule to Show Cause on May 1, 1996, returnable on September 10, 1996. The petitioners were most strident in their initial and reply papers, as well as during oral argument, in questioning whether Judge MacQueen supported the Plan with findings sufficient to satisfy the four-part test announced in *State ex rel. Appalachian Power Co. v. Ranson,* 190 W.Va. 429, 438 S.E.2d 609 (1993).

This Court agreed that the Order of Consolidation entered by the trial court failed to set forth sufficient grounds to establish for review why consolidation was proper within the boundaries recited in *Ranson* and directed the trial court to state in an appropriate order responses to each of the four inquiries described in Syllabus Point 2 of *Ranson (see supra* note 7), which was to be filed in this Court on or before the 7th day of October, 1996.

Judge MacQueen, in response to this Court's Order of September 16, 1996, conducted a further hearing on all issues relating to the Plan and during that hearing made precise findings of fact and conclusions of law addressing the four factors to determine whether or not consolidation was proper as required by *Ranson.*

The Court now has before it all matters of record, including the circuit court's response to the Order of September 16, 1996, and the briefs and arguments of counsel. For the reasons stated below, the Order of Consolidation incorporating the Plan of Trial Management formulated by the respondent judge is approved and the writ of prohibition is denied.

## I.

### STANDARD OF REVIEW

██ As is our custom, we recite the standard by which matters before this Court will be reviewed. A decision by a trial court to consolidate civil actions on any or all matters in issue under Rule 42(a) of the West Virginia Rules of Civil Procedure will be deferentially reviewed under an abuse of discretion standard.

A trial court, pursuant to provisions of [West Virginia Rules of Civil Procedure] Rule 42, has a wide discretionary power to consolidate civil actions for joint hearing or trial and the action of a trial court in consolidating civil actions for a joint hearing or trial will not be reversed in the absence of a clear showing of abuse of such discretion and in the absence of a clear showing of prejudice to any one or more of the parties to the civil actions which have been so consolidated.

Syllabus Point 1, *Holland v. Joyce,* 155 W.Va. 535, 185 S.E.2d 505 (1971).

## II.

### DISCUSSION

Asbestos cases such as those we are now considering present a complex pattern of legal, social, and political issues that threaten to cripple the common law system of adjudication, if for no other reason by the sheer volume of cases. James A. Henderson, Jr. & Aaron D. Twerski, *Stargazing: The Future of American Products Liability Law,* 66 N.Y.U. L.Rev. 1332, 1336 (1991). A recent study concluded that the disposition of all currently pending asbestos cases for both personal injury and property damages, if treated in the traditional course of litigation, would require approximately 150 judge years. *See* Jack B. Weinstein, *Individual Justice in Mass Tort Litigation* 140 (1995) (citing Thomas Willging, History of Asbestos Case Management (Federal Judicial Center staff paper for June 25, 1990, National As-

bestos Conference)). Congress, by not creating any legislative solution to these problems, has effectively forced the courts to adopt diverse, innovative, and often non-traditional judicial management techniques to reduce the burden of asbestos litigation that seem to be paralyzing their active dockets.[8]

■ It is against this backdrop that we analyze the Plan developed by Judge MacQueen to determine whether it is yet another creative, innovative technique designed to achieve an orderly, reasonably swift and efficient disposition of the Premises Liability Cases in a manner that does not trespass upon the procedural due process rights of all of the parties.

■ We begin our analysis of the Plan by measuring it against the four-part test announced by this Court in Syllabus Point 2 of *State ex rel. Appalachian Power Co. v. Ranson*, 190 W.Va. 429, 438 S.E.2d 609 (1993). In *Ranson*, this Court established that a trial court should consider whether or not to consolidate issues under W. Va. R. Civ. P. 42(a), under the following factors: (1) whether the risks of prejudice and possible confusion outweigh the consideration of judicial dispatch and economy; (2) what the burden would be on the parties, witnesses, and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple lawsuits as compared to the time required to conclude a single lawsuit; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. *Id.*

The announced goal of the Plan is to divide the trial of the Premises Liability Cases into two phases. The first phase will not be plaintiff-specific; instead it will be premises-specific by concentrating on whether each location owned by the Premises Liability Defendants was a reasonably safe workplace and, if not, during what period of time the premises was not reasonably safe.

Phase one will develop the fundamental negligence issues associated with (1) the presence of asbestos within the premises; (2) the concentration of asbestos within the premises; (3) the physical and chemical properties of asbestos and whether those properties present an unreasonable risk of harm; (4) the knowledge of the Premises Liability Defendants of the presence and concentration of asbestos, and the resulting risk of harm, if any; (5) what the Premises Liability Defendants should have done, if anything, to address the unreasonable risk of harm, if any, presented by the presence and concentration of asbestos; (6) what the Premises Liability Defendants actually did to address any unreasonable risk of harm presented by the presence and concentration of asbestos; and (7) when did items one through six occur. The response to these fundamental, common negligence issues is determinative of the two discrete questions to be presented to a single jury in phase one.

The trial court has found that the Plan is shaped to effectively and efficiently prove which of the premises were not reasonably

---

**8.** The alternative management techniques used by state and federal judges to handle their enormous dockets of asbestos cases include streamlining the discovery and trial phases; implementing alternative dispute resolution; consolidating cases for trial on all issues; consolidating cases for trial on limited issues; transforming aggregate cases into class actions; placing cases on an inactive docket if the plaintiffs have little or no objective symptoms and holding those plaintiffs in abeyance until their impairment manifests; and appointing expert witnesses and assigning special masters to gather data and encourage settlement. *See In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 748–49 (E. & S.D.N.Y.1991), *vacated*, 982 F.2d 721 (2d Cir.1992), *modified sub nom.*, 993 F.2d 7 (2d Cir.1993). *See also* Deborah R. Hensler, Asbestos Litigation in the United States: A Brief Overview, Written Testimony Delivered to the Courts and Judicial Administration Subcommittee, U.S. House Judiciary Committee (Oct. 24, 1991) ("Courts have certified asbestos class actions, consolidated asbestos cases for trial, and bifurcated, trifurcated and reverse bifurcated issues in both individual and consolidated trials. Courts and parties have developed and implemented court-based and private alternative dispute resolution procedures. Courts have mandated extensive data collection efforts to support settlement efforts, and have experimented with computer-based models for assessing damages. State and federal court judges have joined together to manage caseloads in particular locales. The fact that so many claims have been resolved to date is a tribute to these efforts. But these efforts have failed to expedite a substantial fraction of the caseload. Nor do they appear to have brought about significant reductions in transaction costs.")(footnote omitted); Linda S. Mullenix, *Beyond Consolidation: Postaggregative Procedure in Asbestos Mass Tort Litigation*, 32 Wm. & Mary L.Rev. 475 (1991).

safe, and during what period of time those premises were not reasonably safe, in order to purge the list of defendants in such a manner that only those Premises Liability Defendants who failed to maintain their premises in a reasonably safe condition would continue to phase two of the trial.[9] Those Premises Liability Defendants who did maintain their premises in a reasonably safe condition would be completely and finally dismissed from the Premises Liability Cases with prejudice.

The trial court has found and concluded that the common issues to be developed during phase one can be proven with a limited number of witnesses testifying about the historical background of asbestos; the discovery of the health hazards associated with asbestos; the state-of-the-art asbestos studies and medical knowledge of the disease process created by asbestos; and the health hazard, if any, to the individuals exposed to asbestos. The trial court has concluded that the testimony of these limited number of witnesses can apply to all Premises Liability Defendants and, thus, eliminate the costly, time-consuming repetition of testimony in these areas.

Finally, the trial court has concluded that the Plan is necessary to prevent an exhaustion of funds to the extent that in the event that certain plaintiffs are entitled to relief, the funds will be available to satisfy those judgments rather than having those resources depleted by being spent in determining whether or not the plaintiffs were entitled to that relief.

■ Because of the volume of cases which have been consolidated, this case is probably the best example of why a trial court should be given broad authority to manage its docket with regard to asbestos cases, controlled only by measuring that authority against the four part test of *Ranson.* It is essential that trial courts have the authority to create judicial management procedures. "Trial courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket." Syllabus Point 2,

*B.F. Specialty Co. v. Charles M. Sledd Co.,* 197 W.Va. 463, 475 S.E.2d 555 (1996).

■ The Plan presents a novel method of fact resolution which, while possibly atypical in the traditional litigation process, is indispensable in handling mass litigation cases, such as damage claims for asbestos exposure.

The trial court is in the best position to determine the immediate wisdom of consolidating cases for purposes of resolving common issues of law and fact, and we refuse to second guess the experience and talent of the trial judge. Based on the hearing held by Judge MacQueen regarding the Plan and the findings and conclusions announced following that hearing, we can see no abuse of discretion and find that the Plan is appropriate under the circumstances in conformity with the criteria established in *Ranson.*

We find nothing in the Plan that would prejudice any of the defendants. To be sure, there is much in the Plan to recommend it to all parties because it represents an effective and efficient manner to bring closure to these cases without depleting valuable resources in the event that they are needed to satisfy a monetary award.

Writ denied.

---

**9.** The precise formula for the presentation of phase two of the trial has not been announced. However, it is intended to be plaintiff-specific, concentrating on issues relating to proximate cause, damages, and comparative fault.