528 S.E.2d 768

STATE of West Virginia ex rel. Jack CRAFTON, Helen Crafton, Ricky Scarbro, Carrie Scarbro, Vernon "Gene" Atkinson, John D. Ellison, Tina Ellison, Matthew Griffith, Juanita Dawn Griffith, Roger Moles, Grace Moles, Jerry Workman, Linda Workman, Thomas Atkins and Martha Atkins, Petitioners,

v.

Honorable Robert A. BURNSIDE, Jr., Judge of the Circuit Court of Raleigh County; Belt Service, Inc.; Quality Belt Vulcanizers, Inc.; C & E Mine Belt Service, Inc.; Scandura; Goodyear Tire & Rubber Company; Pang Rubber Company; ITW Devcon; Koch Refining Company; Normac Adhesive Products, Inc.; Lewis–Goetz and Company, Inc.; West Virginia Belt Sales and Repair, Inc.; Linatex Corporation of America; Belt Specialty Corporation; Elkay Mining

Company; Island Creek Corporation; Eastern Associated Coal Corporation; Consolidation Coal Company; Beth Energy Mines, Inc.; Cannelton, Inc.; and other unknown John Doe business entities, Respondents.

No. 26847.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2000.

Decided Jan. 28, 2000.

Dissenting Opinion of Justice Scott Feb. 2, 2000.

Scott S. Segal, Esq., Scott E. Johnson, Esq., The Segal Law Firm, Charleston, West Virginia, Gary S. Wigal, Esq., Gianola, Barnum & Wigal, Morgantown, West Virginia, Attorneys for Petitioners.

Harold S. Albertson, Esq., Albertson & Jones, Charleston, West Virginia, Attorney for Linatex Corporation of America.

L. John Argento, Esq., Dickie, McCamey & Chilcote, Pittsburgh, Pennsylvania, Attorney for Lewis–Goetz and Company, Inc. dba Gooding Rubber Company.

Eric K. Falk, Esq., Davies, McFarland & Carroll, Inc., Pittsburgh, Pennsylvania, Attorney for ITW Devcon and Goodyear Tire & Rubber Company.

Michael M. Fisher, Esq., Offutt, Fisher & Nord, Huntington, West Virginia, Attorney for Scandura.

M. Shane Harvey, Esq., Jackson & Kelly, Charleston, West Virginia, Attorney for Elkay Mining Co., Island Creek Corporation, Beth Energy Mines, Inc., and Cannelton, Inc.

Timothy M. Miller, Esq., Christopher B. Power, Esq., Robinson & McElwee, Charleston, West Virginia, Attorneys for Eastern Associated Coal Corporation.

Richard L. Lancianese, Esq., Baker, Lancianese & Smith, Huntington, West Virginia, Attorney for Quality Belt Vulcanizers, Inc.

Anita R. Casey, Esq., Cynthia A. Majestro, Esq., MacCorkle, Lavender & Casey, Charleston, West Virginia, Attorneys for Patch Rubber Co.

Glenn Murphy, Esq., Heather M. Wright, Esq., McQueen, Harmon & Potter, Charleston, West Virginia, Attorneys for Pang Rubber Company.

Kenneth Willman, Esq., Concetta A. Silvaggio, Esq., Willman & Arnold, Pittsburgh, Pennsylvania, Attorneys for Belt Service, Inc. and C & E Mine Belt Service, Inc.

STARCHER, Justice:

In this case we hold that the circuit court should allow the plaintiffs to withdraw their consent to a bifurcated trial procedure to which their initial counsel had consented.

## I.

### Facts & Background

In the instant case, we address a request for a writ of prohibition by the plaintiffs in several pending cases in the Circuit Court of Raleigh County. These cases have been consolidated, although the limited record before us does not disclose the degree of consolidation. In each case, the plaintiffs make personal injury and wrongful death claims based on exposure to allegedly toxic chemical substances that were used in splicing rubber belts in coal mines. The defendants are enterprises that used, manufactured, and distributed these chemical substances.

On September 29, 1998, the circuit court entered an order granting the defendants' "Case Management Motion," and the court noted in its order that the plaintiffs "consented to the concepts and procedures outlined in the [defendants'] motion for a case management order." The order granting the case management motion provided, *inter alia,* that:

5. These cases shall be tried in a reverse bifurcated manner.[1] Specifically, the issues to be tried [in "phase one" of the trial] will be:

(a) Whether each plaintiff worked with and inhaled, ingested or was otherwise exposed to chemical fumes emitted from the defendants' products and utilized in their workplaces;

(b) If so, the identity of the chemicals that are implicated under plaintiffs' causation theories;

(c) Whether each plaintiff has suffered from a compensable disease process caused by the specific chemicals to which exposure is alleged;

(d) If so, what are each plaintiff's compensatory damages?

6. The issues of "liability," namely *Mandolidis [v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978)] violations of the employer defendants, the liability of the coal mining companies, and the alleged negligence, breach of warranties, liability under *Morningstar v. Black & Decker,* [162 W.Va. 857, 253 S.E.2d 666 (1979)], and liability for abnormally dangerous activities of the manufacturer/supplier defendants, along with the issue of punitive damages as to all defendants, will be severed and tried at a later date.

Other portions of the circuit court's "case management order" permitted discovery on liability issues, and did not preclude the defendants from seeking adjudication of liability issues by summary judgment, prior to the "phase one" "reverse bifurcation" trial of causation and damages.

Subsequent to the court's entry of the case management order, the plaintiffs obtained additional counsel, who filed a "Motion to Reconsider Reverse Bifurcation." Plaintiffs' new counsel filed an affidavit in support of this motion, in which plaintiffs' initial counsel stated that due to his inexperience in toxic tort litigation, he was unaware that his clients would be significantly prejudiced by his consent to the reverse bifurcation trial process.

In their response to the plaintiffs' motion to reconsider, the defendants asserted (1) that reverse bifurcation was appropriate for the trial of the issues in these cases; and (2) that there were no grounds upon which the plaintiffs should be permitted to withdraw

1. "Reverse bifurcation" is the inevitable obfuscatory jargon coined by lawyers and judges to describe the trial of a case where damages are established first and liability second.... The process deserves consideration if a short damages trial and a lengthy liability trial is predicted.... I suspect the process is appropriate only for a fairly narrow category of cases. *In re Report of the Advisory Group for the United States District Court,* 1993 WL 30497 at *52–54 (D.Me. Feb. 1, 1993).

their consent to the case management order. However, the defendants did not assert in their response that they had engaged in such pre-trial conduct, based on the bifurcation aspects of the case management order, so that they would be irretrievably prejudiced by revision of the order.[2]

The plaintiffs replied to the defendants' response, disputing the defendants' contention that reverse bifurcation was appropriate and proper.

The circuit court, in a memorandum opinion, treated the plaintiffs' motion for reconsideration as a "motion for relief from judgment or order pursuant to Rule 60(b)," and denied the motion. Specifically, the circuit court's memorandum opinion focused on whether the plaintiffs' motion for reconsideration should be granted on the grounds of (1) "excusable neglect" by plaintiffs' initial counsel in consenting to the case management order (Rule 60(b)(1)); or (2) "any other reason justifying relief from the operation of the judgment," (Rule 60(b)(6)).

The circuit court concluded that the plaintiffs' initial counsel's consent to reverse bifurcation—even if unwise, based on ignorance, and costly to the plaintiffs' case—was a matter of trial strategy that could not fall in the category of "excusable neglect." The circuit court also concluded that the plaintiffs had not shown that reverse bifurcation was improper or unfairly prejudicial, despite the fact that it might be more financially burdensome on plaintiffs' counsel in financing the cases.

The plaintiffs thereafter filed the instant petition for a writ of prohibition seeking an order from this Court requiring the circuit court to vacate the case management order.

## II.

### Standard of Review

We must initially address the circuit court's characterization of the plaintiffs' motion to reconsider and revise the case management order as a Rule 60(b) motion.

Rule 60(b) by its plain terms applies to a *"final* judgment, order, or proceeding." (Emphasis added.) As the advisory committee's note to *Federal Rules of Civil Procedure,* Rule 60(b) makes clear, ". . . interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." 11 Charles Alan Wright *et al., Federal Practice and Procedure: Civil 2d* § 2852 at 233–34 n. 8 (1995). One leading federal civil procedure treatise explains, "Rule 60(b) . . . applies only to 'a final judgment, order or proceeding.' Thus, the power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b)." *Id.* 8 *Moore's Federal Practice* § 42.21 states: "Orders granting or denying motions to bifurcate issues or claims for trial are interlocutory orders . . . [although they may be appealed in some instances]."

In the instant case, the plaintiffs' motion for reconsideration "should have been viewed as a routine request for reconsideration of an interlocutory . . . decision. . . . Such requests do not necessarily fall within any specific . . . Rule. They rely on 'the inherent power of the rendering . . . court to afford such relief from interlocutory judgments . . . as justice requires.'" *Greene v. Union Mutual Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir.1985) (citation omitted).[3]

2. The record before us also reflects that in a pending case raising similar issues in the Circuit Court of Kanawha County, the presiding judge has denied the defendants' request for a "reverse bifurcation" case management order.

3. The doctrine of "inherent power" provides: "A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.'" Syllabus Point 3, *Shields v. Romine,* 122 W.Va. 639, 13 S.E.2d 16 (1940). The "inherent power"

doctrine is "well recognized" in West Virginia. *See, e.g., Daily Gazette v. Canady,* 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985). The plaintiffs in the instant case argued to the circuit court that:

Given the significant constitutional, statutory and public policy implications involved in a bifurcation decision, this Court, as an independent expositor and defender of the law, has the authority, implicit in its duty to see that justice is done, to reassess its bifurcation decision in

To the extent that a rule of civil procedure was implicated by the petitioner-plaintiffs' motion to reconsider, it was Rule 16(e) of the *West Virginia Rules of Civil Procedure,* which contemplates that a circuit court may amend a scheduling order throughout the course of the proceeding.

Rule 16(e) specifically provides that a scheduling order controls litigation "unless modified by a subsequent order." The standard for such a modification is by implication lower than that contemplated in amending a final pre-trial order, which should only be done "to prevent manifest injustice." *Id.*

■ This Court is empowered to exercise its original jurisdiction to review the legal propriety of a circuit court's pre-trial orders. *See Gebr. Eickhoff Masch. v. Starcher,* 174 W.Va. 618, 328 S.E.2d 492 (1985). This Court has specifically utilized the remedy of prohibition to correct a court's pre-trial order so that a unitary trial could occur. In *State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992), the circuit court's evidentiary pre-trial rulings had in effect bifurcated the claims of the plaintiff, forcing separate proceedings. However, we found that the claims could be tried together without unfair prejudice to the parties, and under this circumstance, our law's strong preference for unitary trials led us to grant the writ, applying an abuse of discretion standard.

■ In summary, we hold that Rule 60(b) of the *West Virginia Rules of Civil Procedure* does not apply to a motion to amend or reconsider a pre-trial scheduling or case management order. The circuit court's application of Rule 60(b) to the plaintiffs' motion for reconsideration of the case management order was erroneous. We review the circuit court's decision not to amend the case

management order under an abuse of discretion standard.

## III.

### *Discussion*

■ Our review of the record before this Court leads us to the firm conclusion that the principal reason that the circuit court entered the "reverse bifurcation" case management order and adhered to that order was because the plaintiffs' initial counsel agreed to it.

■ It has been said that agreements of counsel made during the progress of a cause have never been treated as binding contracts to be absolutely enforced, but as mere stipulations which may be set aside in the sound discretion of the court when such action may be taken without prejudice to either party. *See, e.g., Porter v. Holt,* 73 Tex. 447, 11 S.W. 494 (1889). A stipulation of counsel originally designed to expedite trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice on one of the contracting parties. *Maryland Cas. Co. v. Rickenbaker,* 146 F.2d 751, 753 (4th Cir.1944). *See also Brast v. Winding Gulf Colliery Co.,* 94 F.2d 179, 181 (4th Cir.1938). A stipulation of counsel may be set aside on the request of a party on the ground of improvidence, if both parties can be restored to the same condition as when the agreement was made. Syllabus, *Cole v. State Compensation Comm'r,* 114 W.Va. 633, 173 S.E. 263 (1934).

In the instant case, the plaintiffs sought to be relieved of the effect of their initial counsel having stipulated, due to his undisputed inexperience and ignorance, to a trial procedure that is contrary to that which is enjoyed by essentially all other ordinary civil litigants in West Virginia.[4] Moreover, the economy

---

light of the strong preference that West Virginia places upon a fair trial *vis-a-vis* bifurcation.

This Court has recognized the desirability of circuit courts revisiting issues of substantial importance when fundamental rights are at stake: "We welcome the efforts of trial courts to correct errors they perceive before judgment is entered and while the adverse affects can be mitigated or abrogated." *State v. Jarvis,* 199 W.Va. 38, 45, 483 S.E.2d 38, 45 (1996).

**4.** Our historic preference for unitary trials is clear in our jurisprudence. *See, e.g., Tinsman, supra; see also State ex rel. Cavender v. McCarty,* 198 W.Va. 226, 231, 479 S.E.2d 887, 892 (1996) (*per curiam* ) ("separate trials should not be ordered unless such a disposition is clearly necessary") and Justice Cleckley's concurrence therein. However, where necessity dictates alternative procedures, our rules permit them. *See* Syllabus Point 3, *State ex rel. Appalachian*

and fairness of the sort of procedure that was agreed to by the plaintiffs' initial counsel is the subject of serious dispute.[5]

In light of the foregoing principles, we conclude that the plaintiffs should have been allowed to withdraw their consent to the reverse bifurcation procedure, and that the circuit court abused its discretion in failing to allow them to do so. On the limited record before us, we cannot rule on the issue of whether, absent the consent of the plaintiffs to "reverse bifurcation," the circuit court should adopt that procedure. The issue of possible reverse bifurcation should be addressed by the circuit court *de novo*, making any record that may be necessary, without giving any effect to the plaintiffs' previous stipulation to the procedure.

## IV.

### *Conclusion*

The writ of prohibition is granted as moulded, and the underlying case shall proceed in accord with the principles expressed herein.

Writ Granted as Moulded.

Hon. THOMAS B. MILLER, sitting by special assignment.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of the Court.

SCOTT, Justice, dissenting:

(Filed Feb. 2, 2000)

In crafting a new syllabus point which reads, "Rule 60(b) of the *West Virginia Rules of Civil Procedure* does not apply to a motion to amend or reconsider a pre-trial scheduling or case management order," the majority has correctly stated the law. Yet, even a cursory review of the record in this case demonstrates that the majority was misguided in its resolution of this case. The unstated rule of law applied in this case, had the majority been forthright in its holding, is: "The plaintiffs should have been allowed to withdraw their consent to reverse bifurcation and the circuit court abused its discretion in failing to allow them to do so, notwithstanding their failure to make such a request." This is a remarkable holding.

Plaintiffs argued below, as well as in this Court, that they had a right to modification of the agreed order, notwithstanding their prior consent, because original counsel was inexperienced and because they would suffer prejudice in the form of added expense. The fact that the majority granted · Plaintiffs a writ of prohibition on these grounds is beyond comprehension. The record clearly establishes that Plaintiffs never moved to withdraw their consent to reverse bifurcation. The majority awarded Plaintiffs extraordinary relief on the basis of facts disproved in the record and on a legal principle that was argued neither below nor in this Court.

The majority states that it reached "the firm conclusion that the principal reason" for the trial court's denial of Plaintiffs' motion to modify was the existence of the joint agreement of counsel to bifurcation. This conclusion is based upon pure surmise and conjecture, as well as a disregard of the trial

---

*Power v. MacQueen,* 198 W.Va. 1, 479 S.E.2d 300 (1996).

5. *See Walker Drug Company v. La Sal Oil Co.,* 972 P.2d 1238, 1245 (Utah 1998) (stating that reverse bifurcation is a rare and "drastic" technique arising out of the magnitude of the asbestos-related litigation caseload). *See generally* Roger H. Transgrud, "Joinder Alternatives in Mass Tort Litigation," 70 *Cornell L.Rev.* 779, 827–29 (1985). *See also* Sandra A. Smith, "Polyfurcation and the Right to a Civil Jury Trial: Little Grace in the Woburn Case," 25 *Boston College Env.Aff.L.Rev.* 649, 685 (1998) (focusing on the lawsuit that underlies the book and movie, "A Civil Action" and discussing how inappropriate "polyfurcation" can be "particularly harmful to injured parties" in the toxic tort context). *See*

*also* J.M. Granholm and William J. Richards, "Bifurcated Justice: How Trial–Splitting Devices Defeat the Jury's Role," 26 *U.Toledo L.Rev.* 505 (1995).

The record in the instant case reflects that the circuit judge refused to refer the cases to the Mass Litigation Panel, pursuant to Trial Court Rule 26.01(b)(1) [1999], because they were not sufficiently numerous. Many of the factors that have been suggested as supporting a reverse bifurcated trial procedure, such as clearly established liability that would make a second phase of the trial unlikely, demonstrated absence of prejudice to the plaintiffs, lack of duplicative witnesses, and a great number of plaintiffs or defendants—are not present in the instant case.

court's actual consideration of the issue. In rejecting Plaintiffs' argument that such bifurcation would result in increased expense, the trial judge bolstered his ruling by reference to Plaintiffs' initial consent **and** the fact that the parties had been working under the consent order for over a year. Contrary to what the majority states, the trial court's order reflects an initial determination that the agreed-upon procedure was entirely appropriate, which it was, and a secondary determination that Plaintiffs were not prejudiced as a result of this agreement, as they were not.

The majority's focus on Rule 60(b) is a complete red herring and is a patent disregard of the law. Whether the trial court should have addressed Plaintiffs' motion for reconsideration under Rule 16(e), as expanded by the inherent power of the Court to do justice, rather than under Rule 60(b), is irrelevant. This Court has repeatedly held that as long as the trial court reaches the correct legal conclusion, the ruling will be upheld.[1] Consequently, the majority opinion should have focused on whether the trial court reached the correct legal conclusion, and **not** whether it applied the proper rule.

The majority totally disregarded the critical inquiry necessary for an issuance of a writ of prohibition: What "prejudice" was actually shown to justify the extraordinary remedy of prohibition? Noticeably absent from the majority opinion is any discussion of the criteria typically applied by this Court to decide whether a writ of prohibition should issue in a case where the undeniable standard of review is whether an abuse of discretion occurred.[2] We have previously and consistently held, that:

"[i]n determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among the litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way *to correct only substantial, clear cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.*" Syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).

Syl. Pt. 1, *State ex rel. Cavender v. McCarty,* 198 W.Va. 226, 479 S.E.2d 887 (1996) (emphasis added). Despite the clear requirement that writs of prohibition issue only upon a demonstration of "substantial, clear cut, legal error[ ][,]" the majority failed to mention the applicable standard. *Id.* Such a discussion must be at the critical center of any decision to issue a writ of prohibition.

We must ignore the syllabus to find the real reasons behind the decision in this case. In section one, the majority states that Plaintiffs will be sorely prejudiced because the bifurcation agreed to by their initial attorney "might be more financially burdensome on plaintiffs' counsel in financing the cases." Then, in section three, the majority opines

---

**1.** This Court has previously stated in *State v. Boggess,* 204 W.Va. 267, 512 S.E.2d 189 (1998), that when a lower court makes the right ruling for the wrong reason:

"[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Cumberland Chevrolet Oldsmobile Cadillac, Inc. v. General Motors Corp.,* 187 W.Va. 535, 538, 420 S.E.2d 295, 298 n. 4 (1992)(stating that "even if the reasoning of a trial court is in error . . . we are not bound by a trial court's erroneous reasoning");

*State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 274, 134 S.E.2d 730, 737, *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964)(stating in criminal context that "correctness of . . . [trial court's] final action is the only material consideration, not the stated reasons for [the trial court's] taking such action"). 204 W.Va. at 276, 512 S.E.2d at 198.

**2.** Rulings made by a lower court concerning bifurcation are reviewed by this Court under an abuse of discretion standard. *See Light v. All-state Ins. Co.,* 203 W.Va. 27, 506 S.E.2d 64 (1998); *Barlow v. Hester Indus., Inc.,* 198 W.Va. 118, 479 S.E.2d 628 (1996); *State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994).

that the attorney who agreed to reverse bifurcation suffered from both "undisputed inexperience and ignorance...." I suppose it is safe to say that every attorney is inexperienced and ignorant compared to some other lawyer as to some specific area of practice. But what about the necessity of an evidentiary showing? There is no evidence in this record to support the suggestion that Plaintiffs' original counsel was any more ignorant than present counsel, or that either individual was ignorant of the significant factors involved in the agreement to bifurcate, or that any purported ignorance prejudiced their clients.[3] Moreover, this Court has previously stated, in dicta, that "[t]he mere fact of retaining new counsel, in the absence of incompetent prior representation, does not constitute "manifest injustice" under Rule 16, *WVRCP* [1992] such that it entitles ... [the movant] to relief from the court's previously uncontested deadlines." *State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 161, 451 S.E.2d 721, 727 (1994).

The only "prejudice" to the movants referenced in the majority opinion is the **possibility** that the prosecution of the action might be more expensive to Plaintiffs' counsel in "financing the cases." Is this "might be" evidence relevant to the question of prejudice? Actually, it might be less expensive for everyone to bifurcate the trial as the parties agreed. The question of causation is the engine driving these cases and that issue was the first to be decided. Resolution of that issue might result in quick settlements, and

the "might be" evidence cuts both ways. Unlike the majority opinion, the trial court's decision reflects the fact that thoughtful consideration was given to the prejudice that changing or altering the reverse bifurcation agreement would have on all the parties involved. The majority, however, appears to recognize any prejudice which **might be** suffered by Plaintiffs in proceeding under the bifurcation order and to totally ignore any prejudice which **might be** suffered by Defendants[4] from the rescission of the bifurcation agreement.

There is an absolute lack of any evidence which supports Plaintiffs' averment, and the majority's conclusion, that an increased financial burden would be placed on Plaintiffs' new counsel.[5] Moreover, the majority offers no guidance on how great a financial burden is necessary to justify the issuance of a writ of prohibition. Does it need to be considered in relation to the value of the case? Or the net-worth of the lawyers? Or the fairness of the increased fees and expenses, if any, caused by the bifurcation? Critical to the issue, but completely ignored by Plaintiffs and the majority, is the fact that the trial judge had not decided whether there would be separate trials before separate juries. The pretrial order, agreed to by the parties, specifically defers decisions on the consolidation of claims for the causation/damages phase and the number of juries to be used. Thus, absent a requirement of separate trials before separate juries, how could there be any extra expense caused by the bifurcation

3. What the record does reveal is that the motion for a case management order, which included the request to bifurcate, was filed on April 29, 1998. Nearly three months later, on July 20, 1998, the trial court conducted a hearing on the motion. The agreed order was not entered until September 29, 1998. Assuming, arguendo, that Plaintiffs' original counsel felt he was inexperienced at the time the bifurcation issue arose, he certainly had ample time to consult and become educated in this area prior to signing the agreed order! Further, the only evidence of his "inexperience" which can be gained from his affidavit is that he believed he was "inexperienced" because Plaintiffs' new counsel told him he was.

4. Once again, the majority lobs in another red herring, by justifying the failure to discuss any prejudice to the Defendants as follows: "[T]he defendants did not assert in their response [before the lower court] that they had engaged in

such pre-trial conduct, based on the bifurcation aspects of the case management order, so that they would be irretrievably prejudiced by revision of the order." The Defendants did not have to assert this in their response! The burden of proof for the motion for reconsideration was on the Plaintiffs. It never shifted to the Defendants. The Defendants' response to the motion appropriately focused on the standard of review the trial court should use in deciding whether to grant the motion and whether the Plaintiffs had produced sufficient evidence to meet the standard.

5. The problems arising from lawyer-financing of lawsuits have proven to be immense. What is the proper policy for the courts to follow when such problems arise? That discussion must await a later day, as there is *no evidence* in this case which would permit an evaluation of that issue.

of the issues? In short, there is nothing in the record of this case which demonstrates any prejudice, manifest injustice, or abuse of discretion sufficient to warrant the granting of a writ of prohibition. *See McCarty*, 198 W.Va. at 227, 479 S.E.2d at 888.

The majority would like us to believe that Plaintiffs' counsels' increased financial burden warrants issuance of the writ of prohibition. The crude, but unfortunately justifiable implication, from issuance of the writ, however, is that the majority must have been affected by, or subconsciously agreed with, the contention made by Plaintiffs, both in their memorandum in support of the petition and in oral argument:

> Professors Wright and Miller have discussed the impact of bifurcation on plaintiffs. Wright and Miller note a study concluding that while bifurcated cases take 20% less time than routine cases, defendants win in only 42% of the cases routinely tried while prevailing in 79% of the cases tried by bifurcation.

For the majority to reward Plaintiffs in the face of this shameless appeal to prejudice and bias is incredulous!

Another unfortunate message derived from the issuance of this writ is that trial judges no longer have control over how cases are managed during the pretrial phase, even if the parties are in agreement.[6] Now, rather than a writ of prohibition being a rare "extraordinary" remedy, it is readily available when a party changes his/her mind about a pretrial order, previously agreed to, and the trial court refuses to alter or amend the order. The clear import of the majority opinion is that the evidentiary threshold to justify issuance of a writ of prohibition has just been dropped to an unbelievably low level, especially when a new, more prominent lawyer enters the case.[7] Since two of the four members of the majority served formerly as circuit court judges, as did I, I am left in utter amazement at this unjustifiable interference with the orderly disposition of these complex cases.

On remand, while the majority has required the trial judge to revisit the bifurcation issue de novo, without giving any effect to Plaintiffs' prior consent, the trial judge is reminded that the decision to bifurcate need not be changed, if he concludes that it is the correct procedure to use in this case. The majority stopped short of totally usurping the function of the trial court on this issue. Therefore, absent specific findings of substantial prejudice or manifest injustice to either party, it remains within the trial court's purview to conclude that the decision to bifurcate was sound.

For the foregoing reasons, I respectfully dissent.

---

**6.** As noted in the following excerpt by a leading author on the subject, such an intrusion by an appellate court is highly unusual:

> [A]lthough objections to pretrial orders may be reviewed on appeal after the case has been resolved at the trial level, it is unlikely that it will lead to a reversal. There are basically two reasons for this: first, the order usually reflects the agreement of the parties and second, since the content of and any decision to modify a pretrial order is a matter of trial court discretion, an appellate court will not interfere absent a showing of abuse of that discretion. *It also felt that the best way to insure an effective pretrial conference system is to keep appellate interference to a minimum.*

6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1527 at 260–62 (1990)(emphasis added and footnotes omitted).

**7.** The lowering of the threshold necessary for a writ of prohibition is in direct contravention to this Court's precedent. In syllabus point one of

*State ex rel. Affiliated Construction Trades Foundation v. Vieweg*, 205 W.Va. 687, 520 S.E.2d 854 (1999), this Court held:

> " ' "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code*, 53–1–1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).' Syllabus point 3, *State ex rel. McDowell County Sheriff's Dept. v. Stephens*, 192 W.Va. 341, 452 S.E.2d 432 (1994)." Syllabus Point 1, *State ex rel. Charleston Area Medical Center, Inc. v. Kaufman*, 197 W.Va. 282, 475 S.E.2d 374 (1996).

*Accord State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999); *State ex rel. State v. Reed*, 204 W.Va. 520, 514 S.E.2d 171 (1999); *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W.Va. 316, 484 S.E.2d 199 (1997).