551 S.E.2d 369

STATE of West Virginia ex rel. Ronald ALLMAN, et al., on Behalf of Themselves and Others Similarly Situated; Carol Hartley, et al., on Behalf of Themselves and Others Similarly Situated; and Alfretta Baugh, Administratrix of the Estate of Warren H. Baugh, Deceased, et. al., on Behalf of Themselves and Other Similarly Situated, Petitioners,

v.

Honorable A. ANDREW MACQUEEN, III, Senior Status Judge, Mass Litigation Panel, et al., Respondents,

and

State of West Virginia ex rel. Mobil Oil Corporation, Petitioner,

v.

Honorable A. Andrew MacQueen, III, Senior Status Judge, Mass Litigation Panel, et al., Respondents,

and

State of West Virginia ex rel. Romie Kermit Jones, et al., on Behalf of Themselves and Others Similarly Situated, Petitioners,

v.

Honorable A. Andrew MacQueen, III, Senior Status Judge, Mass Litigation Panel, et al., Respondents.

Nos. 29767, 29768, 29769.

Supreme Court of Appeals of West Virginia.

Submitted June 27, 2001.

Decided July 6, 2001.

Stephen B. Farmer, G. Kenneth Robertson, Farmer, Cline & Arnold, Charleston, West Virginia, Attorneys for the Petitioner, Mobil Oil Corporation.

James F. Humphreys, J. David Cecil, James F. Humphreys & Associates, LC, Charleston, West Virginia, Attorneys for the Petitioners, Romie Kermit Jones, et al.

A. Andrew MacQueen, III, Senior Status Judge, Charleston, West Virginia, Pro Se.

Michael B. Victorson, Dennis C. Sauter, A.L. Emch, Jackson & Kelly, Charleston, West Virginia and David K. Hendrickson, R. Scott Long, Hendrickson & Long, Charleston, West Virginia and Eric M. James, Spilman, Thomas & Battle, Joseph S. Beeson, Robinson & McElwee, Charleston, West Virginia, Attorneys for certain defendants below.

David E. Lamm, Davies, McFarland & Carroll, PC, Pittsburgh, Pennsylvania, Attorneys for the Respondents, The Lincoln Electric Company, et al.

Nora Barry Fischer, Michael A. Cohen, Pietragallo, Bosick & Gordon, Pittsburgh, Pennsylvania, Attorneys for the Respondent, General Electric Company.

William K. Schwartz, Harvit & Schwartz, LC, Charleston, WestVirginia, Attorneys for Amici Curiae, Plaintiffs Represented by Harvit & Schwartz, LC.

Fred Adkins, Luke A. Lafferre, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, West Virginia, Attorneys for Amici Curiae, CSX Transportation, Inc., et al.

Scott Segal, The Segal Law Firm, Charleston, West Virginia, Attorney for Okey Connolly, et al.

Stuart Calwell, The Law Offices of Stuart Calwell, PLLC, Charleston, West Virginia, Attorney for Petitioners, Ronald Allman, et al.

Joseph P. Whittington, Peyton, Parenti & Whittington, Nitro, West Virginia, Attorney for Petitioner, Carol Hartley.

John E. Sutter, Robert H. Miller, II, The Sutter Law Firm, PLLC, Charleston, West Virginia, Attorneys for Petitioner, Alfretta Baugh, Administratrix.

PER CURIAM:

This Court issued a rule on June 7, 2001, requiring Respondent, the Honorable A. Andrew MacQueen, III, to show cause as to why a writ of prohibition should not issue to prevent Respondent from implementing a litigation management plan (hereinafter referred to as the "master plan") developed for addressing the alleged claims of approxi-

mately 8,000 [1] asbestos plaintiffs. Petitioners comprise a smaller group of those individuals who have filed personal injury cases predicated on injury and death due to exposure to asbestos dust.[2] In support of their request for relief, Petitioners argue that the master plan prepared by Respondent does not comply with the November 17, 2000, order entered by the Chief Justice of this Court, which referred the subject claims to the Respondent under the procedures set forth in Trial Court Rule 26.01 ("TCR 26.01"). As relief, Petitioners seek the resolution of their claims en masse through a common issues trial on the issues of product defect, notice and knowledge, and punitive damages. Mobil Oil filed a cross-petition through which it seeks to have TCR 26.01 declared unconstitutionally vague [3] and to have the master plan set aside based on allegations of arbitrary and capricious conduct.[4] After carefully considering the issues presented in the request for extraordinary relief, we conclude that a writ of mandamus [5] shall issue for the reasons stated herein.

## I. Factual and Procedural Background

The events leading to the matters now before us involve the administrative approach this Court has taken to address the problem facing the state's court system with regard to massive filings of civil cases involving common questions of law and/or fact. In 1996,

this Court approved an innovative trial management plan devised by Respondent to more effectively deal with reducing the large number of separate civil actions pending in the Circuit Court of Kanawha County that were filed by or on behalf of individuals claiming physical impairment from direct or indirect asbestos exposure. *See State ex rel. Appalachian Power Co. v. MacQueen,* 198 W.Va. 1, 479 S.E.2d 300 (1996). That plan ordered common-issues mass trials in pending asbestos-related actions. To fully utilize this mass trial concept, this Court assigned three circuit court judges to preside over the trials of those asbestos-related cases which were pending on the dockets of circuit courts throughout the state. The trials were held in Kanawha County and Monongalia County, with the last common-issue trial held in 1998.[6]

Realizing the continuing need for alternatives to the traditional case-by-case trial in various mass litigation situations, this Court endeavored to develop a procedure by which such alternatives could be examined and appropriate trial management plans could be developed. In furtherance of this goal, this Court adopted TCR 26.01, which governs the establishment and operation of a Mass Litigation Panel [hereinafter "MLP"].[7]

Pursuant to the provisions of section (e) of TCR 26.01, Respondent joined the Honorable

1. This Court is uncertain as to the exact number of plaintiffs included in the litigation below. We use this figure based merely on the representations made by Petitioners in their pleading filed with this Court.

2. While certain other groups of asbestos plaintiffs affected by the master plan have joined in the petition for a writ of prohibition, one group of plaintiffs, those plaintiffs represented by attorneys Goldberg, Segal, and Hostler, have filed a response in opposition to the issuance of a writ of prohibition. During oral argument, however, Mr. Segal did not object to the use of alternate means of trial management.

3. We reject without discussion the assertion that TCR 26.01 is unconstitutionally vague and therefore unenforceable.

4. In its cross-petition, Mobil Oil asserts that Respondent's decision to group 20 individual asbestos personal injury claims into a single trial was arbitrary and capricious.

5. Although this case was brought and granted as a petition for prohibition, upon review we believe

that the more appropriate mechanism for addressing the issues raised in the writ is through mandamus. *See Carr v. Lambert,* 179 W.Va. 277, 278, n. 1, 367 S.E.2d 225, 226 n. 1 (1988) (viewing case brought as a writ of prohibition as one in mandamus); *see also State ex rel. Ranger Fuel Corp. v. Lilly,* 165 W.Va. 98, 100, 267 S.E.2d 435, 436 (1980) (transforming petitioner's request for a writ of mandamus into a writ of prohibition); *accord State ex rel. Conley v. Hill,* 199 W.Va. 686, 687, n. 1, 487 S.E.2d 344, 345 n. 1 (1997).

6. Four mass trials were conducted in Kanawha County and two in Monongalia County which resulted in the resolution, in whole or in part, of what is estimated to be over 20,000 asbestos-related cases.

7. The predecessor rule to TCR 26.01 was Trial Court Rule XIX, which was adopted on May, 1, 1998. TCR 26.01 went into effect on July 1, 1999. There is no substantive difference between TCR 26.01 and TCR XIX.

Arthur M. Recht, Judge of the First Judicial Circuit, in filing a motion with the Chief Justice of this Court on September 10, 1999, requesting the referral of all asbestos-based personal injury cases in West Virginia to the MLP.[8] Although this motion was denied because it did not entirely conform with all of the provisions of TCR 26.01, a subsequent referral motion filed by Respondent and Judge Recht on June 27, 2000, was granted[9] by then Chief Justice Maynard by order dated November 17, 2000. In addition to referring all then pending West Virginia asbestos cases to the MLP, Chief Justice Maynard's administrative order directed a stay of further proceedings in all pending asbestos cases, except for specific cases subsequently identified in an order dated February 28, 2001, entered by Chief Justice McGraw.

On behalf of the MLP, Judge Recht wrote a letter dated December 8, 2000, requesting that the Chief Justice transfer all asbestos cases referred to the MLP to the Circuit Court of Kanawha County, and that Respondent be designated to manage the cases so transferred. The request was granted by administrative order of this Court dated December 20, 2000. By administrative order dated January 30, 2001, Respondent was recalled after his retirement and attainment of senior judge status[10] for temporary assignment to the Kanawha County Circuit Court and for service on the MLP.

8. Both Respondent and Judge Recht were members of the six-member MLP when the transfer motion was filed.

9. Prior to filing the second motion, Respondent and Judge Recht convened a meeting on March 1, 2000, to which attorneys representing plaintiffs and defendants in pending asbestos cases were invited, to discuss the transfer of the asbestos claims to the MLP.

10. Respondent's retirement from the Kanawha County Circuit Court was effective December 31, 2000. Respondent attained the designation of senior status judge on January 25, 2001.

11. The meetings were conducted in 2001 on the following dates: February 2, February 12, March 16, April 3, April 10, and May 2.

12. The parties agree that they were provided an opportunity to make suggestions regarding the

A series of meetings between Respondent and counsel for the plaintiffs and defendants in the pending asbestos cases were held for the purpose of formulating a plan for proceeding with the transferred cases.[11] During the course of the meetings, Respondent announced the provisions of a master plan for proceeding with the transferred cases.[12] The master plan was reduced to writing on May 23, 2001, when Respondent signed an order detailing the plan. Among its numerous provisions, the master plan outlines a different trial approach than that formerly employed. Rather than providing for an en masse common-issues trial, the master plan sets forth the dates for a series of small group, all issues trials.[13] Petitioners and cross-petitioners seek extraordinary relief from this Court to prevent the implementation of the master plan.

## II. Standard of Review

▮▮▮ This writ was filed with the Court pursuant to our original grant of jurisdiction over proceedings involving "habeas corpus, mandamus, prohibition and certiorari." W.Va. Const. art. VIII, § 3; W.Va.Code § 51–1–3 (1923) (Repl.Vol.2000). We explained in *State ex rel. Garnes v. Hanley*, 150 W.Va. 468, 147 S.E.2d 284 (1966), that

[m]andamus will lie under that section [W.Va. Const. art. VIII, § 3] implemented by Code, 51–1–3, as amended, to require an inferior court or other "inferior tribunal" exercising "quasi-judicial" powers

design of the litigation plan and that the master plan was announced at one of these group meetings. In the briefs submitted to this Court, the parties do not concur as to the date at which the master plan was announced.

13. The master plan delineates the following trial dates and groups of plaintiffs:

First trial group: September 3, 2001; 20 plaintiffs alleging asbestos induced cancer;
Second trial groups: November 12, 2001; 2 groups of 25 claiming asbestos related disease or physical injury;
Third trial groups: January 14, 2002; up to 4 groups of 25 with the same claims as the second trial group;
Fourth trial groups: March 11, 2002; up to 4 groups of 25 with the same claims as the second trial group;
Fifth trial groups: May 13, 2002; up to 4 groups of 25 with the same claims as the second trial group.

to perform legally any administrative act required of him by a petitioner in mandamus who shows a clear legal right to the relief which he seeks and a mandatory duty upon the respondent to perform that act.

150 W.Va. at 470–71, 147 S.E.2d at 286. Viewing the matter before us as one that requires compulsion rather than prohibition, we choose to consider the petition as having been brought in mandamus. Our standard of review for issuing writs of mandamus is well-established:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl. Pt. 10, *State ex rel. Marockie v. Wagoner*, 191 W.Va. 458, 446 S.E.2d 680 (1994). We proceed to determine whether the requisites for issuing a writ of mandamus are present.

### III. Discussion

■ At the outset, we note that both Petitioners and various defendants have raised issues of prospective constitutional violations based either on the holding of a mass trial or the non-holding of a mass trial.[14] Given the stage of this litigation, we view such issues as premature, especially in light of the fact that no decision has been reached as to whether mass trials will be held or not. For similar reasons, we find it unnecessary to address the constitutional issues raised by defendants concerning prospective awards of punitive damages in these cases. We do caution the trial judges involved in these cases, however, to conduct all proceedings mindful of our recognition in syllabus point three of *MacQueen* that

A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably

swift and efficient disposition of mass liability cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties.

198 W.Va. at 2, 479 S.E.2d at 301. We likewise caution that the various trial judges involved in these asbestos cases must similarly undertake efforts to assure that principles of substantive due process are complied with in the proceedings that occur following this opinion.

As a background to the overwhelming management issues presented by asbestos litigation we iterate comments previously articulated in *MacQueen:*

Asbestos cases such as those we are now considering present a complex pattern of legal, social, and political issues that threaten to cripple the common law system of adjudication, if for no other reason by the sheer volume of cases. James A. Henderson, Jr. & Aaron D. Twerski, *Stargazing: The Future of American Products Liability Law*, 66 N.Y.U.L.Rev. 1332, 1336 (1991). A recent study concluded that the disposition of all currently pending asbestos cases for both personal injury and property damages, if treated in the traditional course of litigation, would require approximately 150 judge years. *See* Jack B. Weinstein, *Individual Justice in Mass Tort Litigation* 140 (1995) (citing Thomas Willging, History of Asbestos Case Management (Federal Judicial Center staff paper for June 25, 1990, National Asbestos Conference)). Congress, by not creating any legislative solution to these problems, has effectively forced the courts to adopt diverse, innovative, and often non-traditional judicial management techniques to reduce the burden of asbestos litigation that seem to be paralyzing their active dockets.

198 W.Va. at 4–5, 479 S.E.2d at 303–04. In testimony offered to the Committee on the Judiciary of the United States House of Representatives on July 1, 1999, Professor William N. Eskridge of Yale *Law* School offered

---

**14.** Petitioners, without citing authority, claim that they are constitutionally entitled to a mass trial, whereas defendants view a mass trial as a procedure that will necessarily result in denial of due process to them as individual parties.

the following observations about the effects of asbestos litigation on the judiciary:

> A big loser is the judiciary, which has a larger management problem than ever before. The courts continue to be deluged with asbestos lawsuits. There are now more than 200,000 of them in the system, and tens of thousands of new cases were added last year... The asbestos litigation problem is one that has defeated the judiciary. An increasing number of judges are now admitting it.

H.R. Comm. on Judiciary, *The Fairness in Asbestos Compensation Act: Hearings on H.R. 1283,* 106th Cong. (July 1, 1999); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 821, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (stating that asbestos litigation "defies customary judicial administration" and "calls for national legislation").

 Having recognized the managerial nightmare presented by what has been referred to as an "elephantine mass of asbestos cases," we nevertheless proceed both to examine the procedural posture of this matter before us and to determine whether the master plan at issue complies with the previous directives of this Court and the requirements of TCR 26.01. *Ortiz,* 527 U.S. at 821, 119 S.Ct. 2295. As an initial matter, we note that this Court's involvement in this matter is both prompted by and required by our constitutional obligation to supervise the State's entire court system. This weighty responsibility was previously articulated in *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978):

> The Judicial Reorganization Amendment, Article VIII, Section 3, of the Constitution, placed heavy responsibilities on this Court for administration of the state's entire court system. The mandate of the people, so expressed, *commands the members of the Court to be alert to the needs and requirements of the court system throughout the state.*

161 W.Va. at 644–45, 246 S.E.2d at 107 (emphasis supplied).

 We invoke our grant of constitutional supervisory power over the court system as a whole based on the absence of any explicit judicial review provided under TCR 26.01 for matters that are proceeding under the mass litigation provisions set forth in that rule. Because the provisions of TCR 26.01 control the underlying civil action, we do not view this matter as one affected by case law interpreting various rules of civil procedure, including Rules 20, 23, or 42, which respectively address issues of joinder, class action, and consolidation. TCR 26.01 was promulgated and adopted by this Court under our constitutional rule-making authority for the express purpose of authorizing the creation of a mass litigation panel for the following objective: "To develop and implement case management and trial methodologies for mass litigation and to fairly and expeditiously dispose of civil litigation." W.Va. T.C.R. 26.01(b)(1). Through the creation of such a mass litigation panel, it was believed that this State's judicial system and those individuals seeking redress would benefit by permitting the use of innovative means of trial management concerning issues unique to mass litigation, which would in turn encourage a more expeditious resolution of these matters than that permitted by traditional means of case resolution. Despite the laudable objectives underlying TCR 26.01 and much effort on the part of both counsel and Respondent towards this goal, the asbestos cases that are affected by the master plan have not reached either trial or resolution as of this date.[15]

The underlying matters were approved to proceed under TCR 26.01 by administrative order entered by then Chief Justice Maynard on November 17, 2000, and a plan was ordered to be produced within ninety days of that order's entry. The master plan prepared by Respondent in response to the directives of this Court's Chief Justice under authority of TCR 26.01 was first provided to this judicial body when Respondent filed his response to the petition on May 25, 2001. The master plan provides for the grouping of certain plaintiffs and includes the scheduling of a trial date of September 3, 2001, for the initial group of twenty plaintiffs that are

---

**15.** We note also that not until the after the petition seeking extraordinary relief was filed with this Court, did Respondent reduce the master plan to writing.

suffering from either asbestos-induced cancer or mesothelioma.[16] Following this first trial group, the master plan provides for a second group trial for November 12, 2001 consisting of two sub-groups of twenty-five plaintiffs each.[17] The only requisite for being included in this second or subsequent trial grouping is that the plaintiffs are to be suffering or have previously suffered from "any 'disease process', or physical injury or disease which may be alleged to result from exposure to asbestos or asbestos containing products." The master plan permits the plaintiffs to control the selection of those plaintiffs to comprise each trial group with the directive that "[i]n selecting any trial group or sub-group, the plaintiffs shall consider factors such as common product exposure, common work sites and related factors in order to minimize the required number of witnesses, to accommodate defense counsel who may represent more than one defendant and to generally facilitate the trial process." The master plan provides a trial date of January 14, 2002, for the third grouping of plaintiffs, which is to be comprised of not more than four sub-groups of twenty-five plaintiffs each. Trial dates for the fourth and fifth groups are slated for March 11, 2001, and May 13, 2001, respectively. The plan provides a scheduling mechanism by which these trials are to operate with the designation of any given trial group occurring 210 days before the selected trial date and, in similar fashion, deadlines for various types of discovery, witness disclosure, and pre-trial conferences are stated with reference to the number of days before the selected trial date.

■ While the master plan, a document that is nineteen pages in length, represents extensive consideration of the issues of discovery, motion filing and resolution, coordination of counsel, document depositing, and non-waiver of objections to consolidation, we are not convinced that the master plan fully meets the directives contained in the November 17, 2000, administrative order of this Court. That administrative order required, implicitly if not explicitly, that the plan to be developed would include a "methodolog[y] for ... fairly and expeditiously dispos[ing] of [the asbestos] civil litigation." W.Va. T.C.R. 26.01. Notwithstanding the specification of trial groupings for trials scheduled for September and November 2001 and the contemplation of additional group trials, the master plan appears in need of supplementation if the goals of TCR 26.01 are to be met.

To be clear, we do not wish to halt the process that has been set in motion with the master plan; our actions in this case are merely to provide assistance with the unquestionably daunting task of trial management that is created by the pendency of the numerous asbestos cases. We note that Respondent, to whom this entire matter was previously assigned, is now a senior-status judge. We note further that Respondent is both experienced and uniquely qualified to conduct as many trials, be they single or all-issue, as Respondent is desirous of conducting and as time and circumstances permit. We cannot deny, however, that the overall administration of the litigation will impose a substantial administrative burden on Respondent, especially given this Court's decision that the litigation must be permitted and encouraged to proceed as expeditiously as possible. We are similarly concerned that the heavy administrative burden of supervising these asbestos cases would likely impinge on Respondent's availability to preside over as many of the "all issues" trials as he may choose to try.

Based on the foregoing, we conclude that the first master case management order of the lower court, entered May 24, 2001, should be supplemented so as to sufficiently dispose of the case management issues contemplated by the order of then Chief Justice Maynard and TCR 26.01 in conformity with the following directives:

1. The Clerk shall enter the mandate for this writ, with the appropriate order, and such mandate shall be effective, forthwith.

---

16. According to the master plan, the designation of this group of plaintiffs has already been accomplished.

17. The master plan indicates that the designation of this group of plaintiffs was due on May 15, 2001, but does not indicate whether in fact such designation has occurred.

2. Subject to the limitations hereafter expressly stated and with the consent and endorsement by order of the Chief Justice, the supervision of the "asbestos personal injury litigation" filed in or transferred to and pending in the Circuit Court of Kanawha County, and such additional asbestos personal injury litigation as is hereafter filed in or transferred to the Circuit Court of Kanawha County, all known as Civil Action No. 01–C–9000, is to be supplemented with the entry of an order (hereinafter the "assignment order") by the Chief Justice designating an additional judge (hereinafter the "supervising judge") to work with, and to have the assistance of Respondent and such additional circuit court judges as may be assigned, in the administration of the asbestos litigation.

3. All provisions of the "First Master Case Management Order" entered May 24, 2001, shall remain and be in full force and effect as to all cases specified and now or hereafter set for trial as "all-issues" cases under such order, except as and to the extent modified by Respondent or any judge assigned to preside over such all-issues trials, and except as otherwise expressly directed herein. Cases that are now or hereafter selected for trial under the all-issues format provided for in the "First Master Case Management Order" shall remain subject to the provisions of such order and the cases selected for such all-issues trials to be conducted by Respondent may be drawn from the entire pool of cases included within Civil Action No. 01–C–9000.

Moreover, as to all other cases encompassed by Civil Action No. 01–C–9000, all provisions of the "First Master Case Management Order" entered May 24, 2000, shall remain and be in full force and effect, except as and to the extent modified by the supervising judge, and except as otherwise expressly directed herein.

4. The provisions of paragraph 3, "Filing of Cases," of the order of May 24, 2001, are hereby approved and confirmed, in conformity with the order of the Chief Justice to be entered as a consequence of this action, which express approval and confirmation is not to be considered a derogation of the effect of any other portion of such order.

5. Respondent shall assure that the Clerk of the Circuit Court of Kanawha County transmits to the supervising judge within twenty days after the entry of the assignment order a complete list of all cases (by parties, counsel and number) designated for trial under paragraphs 11.1 and 11.2 of the order of May 24, 2001, as the September 2001 Trial Group and designated for trial as the November 2001 Trial Group, including any cases substituted pursuant to the terms of the master plan allowing for substitution of plaintiffs.

6. As additional cases are designated under the order of May 24, 2001, for all-issues trials to occur before Respondent on September 3, 2001, November 12, 2001, January 14, 2002, March 11, 2002, and May 13, 2002, or as a substitute for a case previously designated, Respondent shall assure that the Clerk of the Circuit Court of Kanawha County transmits to the supervising judge within ten days after such designation, the list of such cases so designated, with a corresponding listing of parties, counsel, and action number.

Based upon the stay of all matters other than discovery in connection with this Court's issuance in this matter of the rule to show cause order on June 7, 2001, Respondent may need to adjust the previously-scheduled amounts of time between designation of the group and trial for purposes of discovery and trial preparation as those time periods pertain to the third trial groups. While we recognize that the time constraints of pre-trial preparation may result in the need to select an alternative trial date for the third trial groupings, we respectfully express the hope that the trial date selected will remain, or be set as close as possible to, the January 14, 2002, date provided for in the master plan.

7. The supervising judge shall meet and confer with plaintiffs' and defendants' counsel in those cases assigned to Respondent by Order of the Chief Justice dated December 20, 2000, which then have not been designated for trial before Respondent in any of the all-issues trial groups, to consider the number and type of trials deemed appropriate that are in addition to those to be tried

by Respondent. The first of such meetings shall occur not later than thirty days after the entry of the assignment order. The supervising judge shall also consider any information then available concerning the selection of cases for all-issues trials to be presided over by Respondent. At the option of the supervising judge, the parties may also meet and confer on any matters in the order of May 24, 2001, generally applicable to all cases to be thereafter set for trial, upon which the supervising judge or the representatives desire consultation.

8. By way of example only, appropriate trial groups might include, but not be limited to: (1) cases expected to be set for trial on March 11, 2002, or May 13, 2002, before Judge MacQueen; (2) cases involving the premises liability theory; (3) the "steelworker" cases previously set for trial; (4) cases with issues susceptible to mass trial of all or most parties; (5) cases involving common work sites; (6) cases involving common product exposure; (7) cases involving FELA; and (8) cases which, by reason of a particular fact or circumstances in the case, clearly require the separate trial of issues otherwise suited to consolidation. Notwithstanding the preservation of objections to any group trial concept, counsel and/or their representatives are expected to participate in good faith in all such planning conferences with the goal of assisting the supervising judge in adopting a plan that the judge considers will properly serve the objectives of managing this litigation and the legitimate interests of all parties.

9. Within fifteen days of the issuance of the mandate herein, counsel for the plaintiffs and defendants shall caucus and select appropriate representatives to meet and confer with the supervising judge and give written notice of such selection to the supervising judge forthwith but not later than three business days thereafter. Counsel for any party not selected as a representative may furnish to the supervising judge, and one or more representatives acting as a representative of that party, a brief memorandum of that party's position on such issues, not to exceed ten pages, which shall primarily address administrative suggestions for cases or issues to be tried in this process and not be primarily focused on other positions the party may wish to assert concerning the propriety of the mass litigation process. Any such party's objections to any phase of the mass litigation process shall not be deemed waived by participation of counsel in the planning process, notwithstanding whether such objection is made in person or through written memoranda.

10. The supervising judge shall report to the Chief Justice as to: (1) the number and makeup of trial groups; (2) the number of judges that will be necessary to try the particular cases or issues; (3) after consultation with Judge MacQueen, the dates upon which Judge MacQueen would undertake trials in addition to those now scheduled to begin on or before May 13, 2002; (4) the manner in which evidence from previous and/or subsequent asbestos trials may be utilized; (5) such other matters as may be appropriate to expeditiously and fairly try these cases or issues therein; and (6) the proposed schedule for any trials in addition to those set by the order of May 24, 2001, with a view toward commencing all trials no later than July 1, 2002, to provide for the expeditious disposal of the litigation. Such report shall include copies of any amendments the supervising judge has made or expects to make to the order of May 24, 2001, and shall be filed with the Chief Justice within 60 days of the entry of the assignment order.

11. Upon receipt of the reports last mentioned, the Chief Justice shall appoint such number of judges to try these cases as is deemed appropriate.

12. The order of the Chief Justice entered upon the issuance of the mandate in this case shall provide that all asbestos cases filed subsequent to the Motion to Refer filed on June 27, 2000, are transferred to the Mass Litigation Panel for inclusion in the appropriate group and asbestos cases filed subsequent hereto may, upon appropriate order, be transferred to the Mass Litigation Panel for consideration of assignment to the appropriate trial group upon motion of a party, or upon motion of a member of the Mass Litigation Panel, or upon motion of the supervising

judge or the judge assigned to hear any case or trial group.

13. The supervising judge shall confer with and have the assistance of the Administrative Director of the Courts to plan and coordinate with the Chief Justice the assignment of a judge or judges by the Chief Justice to try these cases, to make arrangements for available courtrooms and appropriate equipment, and to arrange for such other matters necessary to try these cases.

14. We hereby direct the Clerk of the Supreme Court to provide a copy of this Opinion to lead counsel for the parties from whom the Clerk has received pleadings addressing this Motion, to the Mass Litigation Panel, and to the Clerk of the Circuit Court of Kanawha County who shall provide a copy of same to all counsel of record in that civil action designated as No. 01–C–9000 and to all circuit court judges.

Having resolved the issues presented to this Court, we hereby issue a writ of mandamus as moulded.

Writ granted as moulded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.