563 S.E.2d 419

STATE of West Virginia ex rel. MOBIL CORPORATION; CCX, Inc.; Dravo Corporation; Great Lakes Carbon Corporation; Green Tweed & Company, Inc.; Limbach, Inc.; Pittsburgh Metals Purifying Company; Plibrico Company; Robertson CECO Corporation; Seegott, Inc.; Zurn Industries; General Electric Company; Monsanto Company, NKA Pharmacia Corporation; Combustion Engineering, Inc.; Certain Defendants and Certain Premises and Employer Defendants; Ford Motor Company; Daimler Chrysler Corporation; and General Motors Corporation, Petitioners,

v.

Honorable Martin J. GAUGHAN, in His Capacity as a Judge/Special Appointee of the West Virginia Mass Litigation Panel; and All Plaintiffs in the Case Styled in re: Asbestos Litigation, Civil Action No. 01–C–9000, Kanawha County, Respondents.

No. 30314.

Supreme Court of Appeals of West Virginia.

April 25, 2002.

Stephen B. Farmer, G. Kenneth Robertson, Farmer, Cline & Arnold, Charleston, West Virginia, Attorneys for the Petitioner, Mobil Corporation.

R. Scott Long, Stephen M. Schwartz, Hendrickson & Long, Charleston, West Virginia, Attorneys for the Petitioners, CCX, Inc.; Dravo Corporation; Green Tweed & Company, Inc.; Limbach, Inc.; Pittsburgh Metals Purifying Company; Plibrico Company;

Robertson Ceco Corporation; Seegott, Inc.; and Zurn Industries.

Nora Berry Fisher, Michael A. Cohen, Pietragallo, Bosick & Gordon, Pittsburgh, Pennsylvania, Attorneys for the Petitioner, General Electric Company.

Charles M. Love, III, Phyllis M. Potterfield, Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorneys for the Petitioner, Monsanto Company, nka, Pharmacia Corporation.

Kathy K. Condo, Reed Smith, LLP, Pittsburgh, PA, Attorney for the Petitioner, Combustion Engineering, Inc.

J. Tyler Dinsmore, Joseph M. Sellaro, Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorneys for the Petitioners, Ford Motor Company and Daimler Chrysler Corporation.

John R. McGhee, Jr., Kay, Casto & Chaney, Charleston, West Virginia, Attorney for the Petitioner, General Motors Corporation.

Michael B. Victorson, Dennis C. Sauter, Eric M. James, Paula L. Durst, Spilman, Thomas & Battle, David K. Hendrickson, R. Scott Long, Hendrickson & Long, Joseph S. Beeson, Robinson & McElwee, Charleston, West Virginia, Attorneys for Certain Defendants/Premise Defendants.

Ronald L. Motley (Pro Hac Vice), Ness, Motley, Loadholt, Richardson & Poole, Mount Pleasant, South Carolina, R. Dean Hartley, James M. O'Brien, Leslie Crosco, Hartley, O'Brien, Parsons, Thompson & Hill, Wheeling, West Virginia, John Sutter, Robert Miller, The Sutter Law Firm, PLLC, Charleston, West Virginia, Harvey Peyton, Peyton, Parenti & Whittington, Nitro, West Virginia, James F. Humphreys, J. David Cecil, James Humphreys & Associates, Stuart Calwell, John Skaggs, Law Office of Stuart Calwell, PLLC, Charleston, West Virginia, Bruce E. Mattock, Theodore Goldbert, Goldbert, Persky, Jennings & White, Pittsburgh, PA, John Cooper, Cooper & Preston, Parsons, West Virginia, James M. Barber, William K. Schwartz, Harvit & Schwartz, Scott S. Segal, Segal Law Firm, Charleston, West Virginia, Attorneys for Plaintiffs in Asbestos Litigation.

PER CURIAM.

Petitioner Mobil Corporation[1] seeks extraordinary relief from a February 26, 2002, Trial Scheduling Order[2] entered by the Circuit Court of Kanawha County in connection with certain asbestos-based personal injury cases that have been amassed under West Virginia Trial Court Rule ("TCR") 26.01. Mobil argues that the procedures contemplated by the lower court in connection with bringing the asbestos cases to trial will, as a matter of certainty, result in a denial of its Due Process rights if trials ensue under the outlined, but as yet unfinalized, trial procedures. Upon our full review of this matter, we do not find that Mobil has met the requirements for entitlement to either a writ of prohibition or a writ of mandamus. Accordingly, the requested writs for extraordinary relief are hereby denied; however, due to the inherent complexities involved with the management of these asbestos cases, we proceed to set forth certain observations and cautionary concerns for the trial court's consideration and use.

## I. Procedural Background

This matter arises in connection with the grouping of presumably several thousands[3] of asbestos personal injury claims under the provisions of TCR 26.01. In addition to addressing the propriety of these cases proceeding under TCR 26.01 in *State ex rel. Allman v. MacQueen*, 209 W.Va. 726, 551 S.E.2d 369 (2001), we outlined a fourteen-point directive for the trial court in connection with the management of these cases. *See id.* at 732–35, 551 S.E.2d at 375–378.

However, before those directives could be fully implemented, Mobil sought relief from this Court[4] in connection with the trial court's intent to use a mass trial format, the prospective application of various trial groupings, and the use of certain measures for calculating damages. Much of the relief sought by Mobil was previously considered and rejected in the *Allman* decision. For example, Mobil previously raised the argument, which we rejected, that both Rule 42 of the West Virginia Rules of Civil Procedure and the cases construing that rule were controlling. *See Allman*, 209 W.Va. at 731, 551 S.E.2d at 374 (noting that "[b]ecause the provisions of TCR 26.01 control the underlying civil action, we do not view this matter as one affected by case law interpreting various rules of civil procedure, including Rules 20, 23, or 42, which respectively address issues of joinder, class action, and consolidation").

At the time Mobil filed its petition for relief in late December 2001, the only ruling that had been issued by Judge Gaughan was a "Report," which was entered on September 6, 2001. As an initial matter, Judge Gaughan concluded that "because of the very complicated intertwining of plaintiffs' attorneys, multiple defendants and their defense attorneys, varying exposures to asbestos and different theories of liability, it is futile to continue to pursue small all-issues trials over a long period of time as contemplated by the current trial schedule."[5] After discussing the use of mediation to resolve these cases and indicating that mediation would be addressed through a separate order[6] and

1. Various other defendants have joined with Mobil in seeking relief from the trial court's orders of September 6, 2001, and February 26, 2002, relative to both pre-trial and trial matters.

2. At the time Mobil filed its petition, the Trial Scheduling Order had not yet been entered. Mobil was initially seeking relief from the September 6, 2001, Report of the trial court relative to this litigation.

3. Consistent with our earlier observation in *Allman*, we are "uncertain as to the exact number of plaintiffs included in the litigation below." 209 W.Va. at 728 n. 1, 551 S.E.2d at 371 n. 1. During oral argument of this matter, however, one of plaintiffs' counsel represented to the Court that the trial group currently is made up of 7,715

cases if the FELA cases are included, and 5,515, if those cases are excluded.

4. Mobil filed its motion seeking extraordinary relief on December 21, 2001, and we issued a rule to show cause on January 23, 2002.

5. The "current trial schedule" referenced by Judge Gaughan was the schedule originally set by Judge MacQueen with certain modifications indicated by this Court through our decision in *Allman*.

6. Judge Gaughan entered two additional orders on September 6, 2001, each of which concerned mediation of the asbestos cases pursuant to Trial Court Rule 25. A separate order governed the "railroad" asbestos cases, while all other as-

would be scheduled to occur between October 1, 2001, and March 4, 2002,[7] Judge Gaughan provided for a June 24, 2002, mass trial date. Under the trial plan described in the Report, three judges and three juries would be convened for the purpose of resolving "issues that are common to all or almost all of the parties." Following this initial phase of trying common issues, the trial court contemplated at the time of the September 6, 2001, Report that "additional juries w[ould] be picked to try the issues of exposure/causation and damages." Based on the history of previous mass trials, Judge Gaughan anticipated that "through the elimination of parties during the mediation and the jury trial process ..., the number of litigants would be drastically reduced within two months of the initial verdict on liability." At such time, the trial court speculated that it might attempt to use a damage matrix for purposes of the unresolved cases.[8] Appreciative of both the potential unworkability of or the need to completely discard the matrix concept, Judge Gaughan stated that "it is the intention of the Court to continue to try cases to jury verdict until there are no unresolved trials." After discussing the use of a unified numbering system for documents and a method for dealing with previously-ruled upon motions, Judge Gaughan ended the Report by observing that "the trial plan has not been solidified." [9]

In late December 2001, Mobil sought relief from this Court based on the approach outlined by Judge Gaughan in the September 6, 2001, Report. Mobil asked this Court to vacate the September 6, 2001, ruling on the grounds that the trial court's decision to "consolidat[e] thousands of unrelated individual asbestos personal injury claims into a single trial was arbitrary and capricious" and that such decision denied Mobil its right to Due Process and Equal Protection. Mobil challenged the trial court's refusal to conduct evidentiary hearings on the issue of whether these claims could be grouped together and still provide a fair determination of the issues presented, as well as the contemplated use of a punitive damage matrix. Mobil further alleged that the trial court was thwarting its "efforts to secure review" by "failing to set forth specifically the procedures to be used in the consolidated trial."

In response to Mobil's request for relief and the rule to show cause, Judge Gaughan issued the February 26, 2002, Trial Scheduling Order. In that order, the trial court further developed some of the ideas outlined in the September 6, 2001, Report. To illustrate, the trial court provided additional details regarding the format to be used at the September 23, 2002, trial.[10] Three simultaneous trial groupings are to proceed simultaneously, with the object of determining issues solely related to the fault of the various defendants. The trial groupings represent, in generalized fashion, the various causes of action alleged by the plaintiffs: (1) product liability claims; (2) premises liability claims; and (3) deliberate intent causes of action asserted under West Virginia Code § 23-4-2 (1994) (Repl.Vol.1998). The scheduling order indicates that interrogatories will be submitted to the three juries to permit individualized findings of liability for each defendant.

bestos personal injury claims were subject to a general order of mediation. Under the general mediation order, the plaintiffs were directed to submit within 120 days of the order's entry certain information to the asbestos registry or be barred from participating in the mediation process outlined in the September 6, 2001, mediation order. The information required for the registry was essentially identifying information relative to an individual's work and health history, as well as product identifying information concerning the respective plaintiff's exposure history.

7. This Court is unaware of how many, if any, asbestos cases were resolved through the mediation process.

8. *See Hilao v. Estate of Marcos,* 103 F.3d 767 (9th Cir.1996) (upholding use of statistical matrix for damage calculations on Due Process challenge).

9. Judge Gaughan further indicated in the September 6, 2001, Report that it was his "intention to continue to work with Judge MacQueen and others experienced in the trial of asbestos litigation to develop a process which will eliminate the need for repetitive discovery depositions, interrogatories, requests for admissions, etc."

10. The earlier selected mass trial date of June 24, 2002, was postponed due to the complexities involved in getting these matters to trial.

After the liability trials have been completed, new juries will be selected for mini-trials that will be convened to resolve issues of causation and damages. Under the plan outlined in the scheduling order, an unspecified number of plaintiffs will be involved in the mini-trials "against their common defendants." The trial scheduling order further provides that the "preferred manner of addressing the causation and damages issues will be to break down into manageable groups based on causes of action, geographic locations, and similar exposure criteria." At the start of the mini-trials, each trial judge will read the verdict form from the liability trials, including all special interrogatories, and the jurors will be advised that they are bound by those findings of liability, leaving for their resolution issues solely involving causation and damages. With regard to the possible use of a matrix, Judge Gaughan indicated that "a workable plan for utilizing a matrix is *not* before the court, and there is no need to take evidence on the use of a matrix until at least the scheduling conference for the causation and damages mini-trials." [11]

Mobil seeks relief both from the September 6, 2001, Report and from the February 26, 2002, Trial Scheduling Order.

## II. Standard of Review

 While Mobil styled its petition alternatively as either a writ of prohibition or a writ of mandamus, we choose to treat the petition as a writ of prohibition given the nature of the relief sought by Mobil. Our standard of review for writs of prohibition that do not involve issues of jurisdiction was announced in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Against these principles, we consider whether the relief sought by Mobil meets these standards for issuance of a writ of prohibition.

## III. Discussion

### A. *Ranson* Findings

 We first address the procedural argument that Mobil reasserts in contending that the lower court has committed error by not making certain findings that are commonly referred to as the *Ranson* findings. [12]

---

11. The trial court further stated that by the time of the scheduling conferences for the mini-trials it anticipated that it would "be able to ascertain the necessity of implementing such a matrix based on the type of cases and the number of plaintiffs and defendants remaining in the action."

12. "The trial court, when exercising its discretion in deciding consolidation issues under *W.Va. R.Civ.P.* 42(a), should consider the following factors: (1) whether the risks of prejudice and possible confusion outweigh the considerations of judicial dispatch and economy; (2) what the burden would be on the parties, witnesses, and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple lawsuits as compared to the time required to conclude a single lawsuit; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. When the trial court concludes in the exercise of its discretion whether to grant or deny consolidation, it should set forth in its order granting or denying consolidation sufficient grounds to establish for review why consolidation would or would not promote judicial economy and convenience of the parties, and avoid prejudice and confusion." Syl. Pt. 2, *State ex rel. Appalachian Power Co. v. Ranson*, 190 W.Va. 429, 438 S.E.2d 609 (1993).

Although this Court clearly rejected this argument in *Allman*, we take this opportunity to discuss why *Ranson* findings are not required in matters proceeding under TCR 26.01. *See Allman*, 209 W.Va. at 731, 551 S.E.2d at 374. When we ruled upon the petition seeking extraordinary relief in *Allman*, we determined that our jurisdiction to address the issues raised therein concerning a litigation management plan issued in connection with these same asbestos cases arose by virtue of "our constitutional supervisory power over the court system as a whole." *Id.* We chose to address the issues raised in *Allman* under those general supervisory powers due to the "absence of any explicit judicial review provided under TCR 26.01 for matters that are proceeding under the mass litigation provisions set forth in that rule." *Id.*

Unlike the earlier asbestos cases that were tried *en masse* in Kanawha and Monongalia Counties, and are known as Kanawha Mass I–IV and Mon. Mass I and II, the procedural posture of *Allman* was unique in that the cases were not combined as a result of the provisions of Rule 42 of the West Virginia Rules of Civil Procedure. Because the earlier tried mass asbestos cases preceded the promulgation of TCR 26.01, which went into effect on July 1, 1999, those cases proceeded under traditional principles of consolidation pursuant to the provisions of Rule 42. In marked contrast to those previously consolidated asbestos cases, the cases involved in *Allman* were combined under the authority of TCR 26.01. To invoke TCR 26.01, Judge MacQueen and the Honorable Arthur M. Recht submitted petitions to this Court in which the grounds for grouping the cases together as "mass litigation" under the rule were fully set forth. Upon review of those grounds and upon satisfaction that the cases had the necessary criteria for proceeding under the provisions of TCR 26.01, then Chief Justice Maynard entered an order on November 17, 2000, granting the request to conjoin these cases under the mass litigation trial court rule.

To fully understand the genesis of TCR 26.01 requires an appreciation of the fact that the earlier mass asbestos cases—Kanawha Mass I–IV and Mon. Mass I and II—gave both the trial courts involved in those cases, as well as this Court, insight into the unique considerations that arise with mass tort suits involving common factual scenarios and/or theories of causation. *See State ex rel. Appalachian Power Co. v. MacQueen*, 198 W.Va. 1, 5, 479 S.E.2d 300, 304 (1996) (noting that due to Congressional lack of action, the courts have been forced "to adopt diverse, innovative, and often non-traditional judicial management techniques to reduce the burden of asbestos litigation that seem to be paralyzing their active dockets"). Through the experience of those earlier cases, various constructs emerged regarding how to balance the right of the parties to have access to the judicial system in a reasonably prompt fashion without simultaneously grinding the court system to a halt to the detriment of all other matters. *See, e.g., id.* at 5 n. 8, 479 S.E.2d at 304 n. 8 (discussing alternative management techniques employed by state and federal courts for asbestos litigation). Perhaps the most important lesson that was learned from those earlier mass asbestos cases is that the management of these cases cannot be accomplished without granting the trial courts assigned to these matters significant flexibility and leeway with regard to their handling of these cases. *See id.* at 6, 479 S.E.2d at 305 (recognizing importance of granting trial courts "broad authority to manage its docket with regard to asbestos cases"). A critical component of that required flexibility is the opportunity for the trial court to continually reassess and evaluate what is required to advance the needs and rights of the parties within the constraints of the judicial system. Out of this need to deal with "mass litigation" cases in non-traditional and often innovative ways, TCR 26.01 was drafted and adopted.

While we do not suggest that TCR 26.01 perfectly addresses the entirety of the issues that arise in conjunction with the handling of mass litigation claims,[13] we conclude that this rule, as well as the implementing efforts of

---

**13.** Nor do we think that any one rule could both contemplate and effectively address all the poten-

tial issues that arise with mass litigation.

the trial courts and this Court, represent the judicial system's best efforts to address the unique challenges of managing this voluminous litigation, while at the same time trying to afford substantial justice to all the parties involved in a timely manner. We further observe that TCR 26.01, by sanctioning mass litigation, seeks to meet the constitutional mandate of administering justice without delay. *See* W.Va. Const. art. III, § 17. As many courts and commentators agree,[14] it would have been far preferable for Congress to have authorized the development of a compensation system for asbestos claims that could have, in an administrative manner similar to the workers' compensation system or federal black-lung cases, addressed redress for victims of asbestos exposure and injury, at least in the first instance. Due to the lack of any such alternate recovery mechanism, however, the state and federal judiciaries throughout this country have been forced, by default, to accept the "managerial nightmare" of dealing with, or being inundated by, an inestimable and seemingly endless number of asbestos cases. *Allman,* 209 W.Va. at 731, 551 S.E.2d at 374.

While we recognized in *MacQueen* that the trial court's latitude in managing asbestos cases was to be "controlled only by measuring that authority against the four part test of *Ranson*," the adoption of TCR 26.01 has effectively superseded the requirement that the *Ranson* factors be used in all mass trial cases, especially where, as here, the cases proceed independent of the consolidation mechanisms set forth in Rule 42.[15] 198 W.Va. at 6, 479 S.E.2d at 305. In seeking to have the trial court go back and make *Ranson* findings, Mobil overlooks the fact that the purpose of those findings was only to make the *initial* determination of whether the cases should be grouped together for trial purposes. With the adoption of TCR 26.01, the determination of the need to group

cases as "mass litigation" for trial purposes is made through a process that operates in a fashion distinct from the steps previously specified in *Ranson.* Intrinsic to the adoption of TCR 26.01 and its use is an initial finding by this Court of both the need to group cases as "mass litigation" for trial purposes and the appropriateness of conjoining the cases for trial purposes based upon common factual and/or legal issues. Because this Court has previously approved the treatment of the current asbestos cases under the mass litigation rule, there is no reason to reexamine whether these cases should have been grouped together in the first instance. We are long past the initial determination, which was reached by this Court in November 2000, that these cases can, based on the existence of common factual and/or legal issues, be grouped together for trial purposes. Accordingly, we reject Mobil's contention that the trial court is required to make *Ranson* findings[16] in this case before it proceeds further.

Like our consideration of the petition in *Allman,* our review of Mobil's petition arises in connection with our constitutional authority to supervise the court system as a whole. *See Allman,* 209 W.Va. at 731, 551 S.E.2d at 374. And, while we agree with the recognition in *MacQueen* that trial courts must have broad latitude in managing these asbestos cases, we emphasized in *Allman* that the trial court's actions must reflect consideration of and be in accord with the procedural and substantive due process rights of the parties. *See* 209 W.Va. at 730, 551 S.E.2d at 373. Accordingly, our consideration of the issues raised in Mobil's petition is driven by an overarching concern that the trial court's management of these asbestos cases does not operate in a fashion inimical to the parties' Due Process rights and basic notions of fundamental fairness. *See id.*

**14.** *See, e.g., Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 821, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (stating that asbestos litigation "calls for national legislation"); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 598, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (recognizing that in 1991 the Judicial Conference Ad Hoc Committee on Asbestos Litigation had called for "federal legislation creating a national asbestos dispute-resolution scheme").

**15.** *See* W.Va.T.C.R. 26.01(g) (providing that TCR 26.01 does not "affect the authority of a circuit judge to act independently under the provisions of" Rule 42).

**16.** *See supra* note 12.

## B. Trial Scheduling Order

We have carefully reviewed Judge Gaughan's February 26, 2002, order, which is designed to bring these cases to trial over the next few months through the use of the above-discussed bifurcated process. We wish to make clear that Judge Gaughan's decision to enlarge the time frame for trying these cases that we set out in *Allman* was well-justified. *See* 209 W.Va. at 733–34, 551 S.E.2d at 376–77. We consider the adjustment of the time frame to be in accord with our instruction in *Allman* that the trial court should organize and bring these cases to trial with appropriate concern for fundamental fairness and Due Process. *See* 209 W.Va. at 730, 551 S.E.2d at 373. In that same spirit, we observe that the trial court has authority to make additional time frame modifications to the February 26, 2002, scheduling order as it deems necessary and/or required to meet the legitimate needs of the parties, provided that such alterations do not thwart this Court's concern that these cases be resolved in as prompt a fashion as possible to meet the Constitutional directive of administering justice "without … delay." W.Va. Const. art. III, § 17.

■ The trial court's decision to begin the bifurcated trial process by initially resolving issues of liability and subsequently convening "mini-trials" to address the remaining issues of causation and damages is consistent with past mass trial practices in this state. Because the trial court has yet to finalize the specifics regarding identification of the common issues that will be the focus of the initial liability phase of the litigation, Mobil's contention of a denial of Due Process predicated on the lack of commonality of the issues subject to the liability phase is simply premature. We cannot, in advance of any such final determination of these common issues, resolve Mobil's speculative, and possibly unrealized, claims of Due Process violations.

■ Likewise, we cannot substantively address Mobil's concerns regarding the potential use of a matrix, or a punitive damage multiplier, because the trial court has not yet definitively ruled upon the use of either of these mechanisms. Accordingly, any consideration of these issues at this time would be clearly premature. The trial court's announcement to postpone, for the time being, any decision regarding the potential use of a matrix underscores the precipitous nature of ruling on this issue at this juncture. Matters such as a matrix and the use of a punitive damage multiplier, given the unresolved nature of the use of such mechanisms, can be better addressed by this Court upon appeals taken from final orders.

We perceive that the trial court will recognize and accommodate the legitimate limitations of the parties with regard to strict adherence to various parts of the scheduling order and will make certain adjustments to the time periods specified in the current order.[17] For example, discovery deadlines may need to be adjusted to reflect both the realities of scheduling logistics and the need to focus initially on obtaining information pertinent to the common issues phase of the litigation with subsequent discovery permitted, as needed, to obtain more complete information necessary for the remaining phases of the litigation.[18] We feel certain that

---

17. For example, the scheduling order in effect required that the plaintiffs "certify" certain detailed information relative to their claim and injury or risk the dismissal with prejudice of their claims. That date for certification has passed and, to this Court's knowledge, no claims have been dismissed pursuant to that order. Just as modifications to the certification requirements may need to be imposed, the trial court may also need to modify its temporal restrictions pertaining to the discovery deadline imposed on the defendants regarding product identification and the correlative sanction of precluding the admission of certain evidence.

18. In this Court's opinion, it would be prudent to consider, upon proper request from the parties, a restructuring of the discovery process as a whole to more accurately match the need for obtaining information to the particular phase of the litigation. By better tailoring the discovery process to the respective phases of the litigation, it may be possible to somewhat curtail the resulting time and financial burdens imposed on the parties by requiring the completion of all-phases discovery before the common issues phase of the litigation has commenced. In this same vein, we observe that sanctions relative to discovery, if any, might best be addressed at the appropriate point in the trial process to which the discovery relates and should not be prematurely considered prior to the time at which such information is required.

the trial court will consider all proper requests for modifications to the scheduling order, without losing sight of the objective to timely resolve as many asbestos claims as reasonably possible while at the same time ensuring that appropriate measures are undertaken during both the pre-trial and the trial stages of this litigation to extend basic guarantees of fairness to all the parties.

It is this Court's perception that the trial court has listened carefully to requests raised from both the plaintiffs and the defendants below concerning the need to consider various amendments to the February 26, 2002, scheduling order. We are confident that the trial court will continue to accommodate the genuine concerns raised by the litigants [19] and give proper consideration to matters involving exigent circumstances, as they arise. We strongly caution the parties to limit their requests for scheduling modifications to matters involving legitimate need, being careful not to inundate the trial court with motions motivated more by posturing concerns than by proper legal grounds.

We note that the cases referred to the supervising judge include all those filed in the state based on exposure to asbestos. In numbered paragraph twelve of *Allman,* we provided for the inclusion of "asbestos cases filed subsequent" to that decision to be considered for transfer to the Mass Litigation Panel for disposition along with those cases already included in the group. 209 W.Va. at 734, 551 S.E.2d at 377. By referencing subsequently-filed asbestos cases, this Court was expressing its concern that the trial court should retain the ability to address both those asbestos cases already filed and included in the mass litigation grouping, as well as those cases yet to be filed that could properly be transferred for inclusion into the group. In addition, we observe that the trial court must maintain the necessary flexibility to address issues that arise during the pre-trial process, especially those issues deserving immediate attention such as those cases which, due to the severity of a particular plaintiff's injuries or medical condition, suggest expedited consideration for trial purposes.

Upon a full review of the petition and arguments, we do not find that Mobil has satisfied the requirements for issuance of a writ of prohibition. *See Berger,* 199 W.Va. at 14–15, 483 S.E.2d at 14–15, syl. pt. 4. Even if we chose to treat this petition solely as a petition for judicial review under TCR 26.01, similar to the *Allman* petition, we do not find the issues sufficiently ripe for review. The trial court deserves to be accorded the necessary flexibility to consider and address the issues raised by the parties and, perhaps even more critically, the opportunity to re-evaluate the trial plan during its operation and to make necessary modifications when it determines that alterations are warranted. Lending further emphasis to the precipitous nature of this petition is the fact that the trial court simply has not had sufficient opportunity to identify with any finality the issues that are to be tried in common with regard to the liability phase or even to consider how the discovery process might be further tailored to address the issues to be tried at the various phases of the litigation, rather than to require all discovery to be completed by a date that precedes the initial liability trials.

While we chose to review the petition filed in *Allman* and the instant pleading filed by Mobil, we fully intend to allow the supervising judge to continue to fashion and implement various trial management plans without further intrusion by this Court. It is our clear preference not to address these cases again until final orders are in place and grounds for appeal are ripe. We recognize, however, that this Court may choose to exercise its constitutional grant of powers if, and when, issues of constitutional or overarching significance arise that demand immediate relief.

Having determined that Mobil has not demonstrated grounds sufficient to meet the standard for issuing a writ of prohibition, we hereby deny the requested relief; having no basis for issuing the requested extraordinary

---

**19.** As another means of ensuring that the rights of the parties receive the protection they deserve, we urge the trial court to place all discussions regarding substantive alterations to the trial scheduling order on the record.

relief, we similarly are without grounds to issue a stay of the proceedings below. Given this Court's continuing concern that these cases proceed expeditiously, with due regard for all parties' rights, we hereby direct the entry of the necessary order and the issuance of the mandate pertaining to this petition forthwith.

Writ denied.

Chief Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Judge JOHN T. MADDEN, sitting by temporary assignment.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.