# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **C.L.**

**No. 16-0728** (Mercer County 15-JA-061-WS)

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.V., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's July 12, 2016, order terminating his parental rights to then two-year-old C.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph T. Harvey, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court committed plain error in terminating his parental rights to the child based on a substance abuse problem that was not alleged in the abuse and neglect petition and was not the basis of his adjudication.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition and an amended petition against petitioner in which it alleged that he had a prior involuntary termination of his parental rights to two older children in 2010 and was incarcerated in prison at Huttonsville Correctional Center, Huttonsville, West Virginia. In the petitions, the DHHR also made allegations against four additional respondents regarding their illegal drug use and its effect on C.L. and another child.

In August of 2015, the circuit court held an adjudicatory hearing. Petitioner did not contest adjudication. At the hearing, the circuit court heard evidence that petitioner was incarcerated for the entirety of the child's life and that he had not provided for the child. Further, petitioner remained incarcerated at the time of the hearing, although he was scheduled to be released approximately one month later and claimed to have already arranged employment upon

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). The proceedings below involved another child not related to petitioner and not at issue in this appeal.

his release. At the close of evidence, the circuit court found that petitioner "has neglected his child by his incarceration during the child's life." Thereafter, petitioner's motion for a post-adjudicatory improvement period was granted. In February of 2015, the circuit court held a review hearing. At that time, petitioner reportedly failed a drug screen.[2]

In April of 2016, the circuit court held a dispositional hearing. At that hearing, the DHHR worker testified that between the time of petitioner's release from prison in late September of 2015 and April of 2016, he was scheduled to attend twenty-two visits with the child. However, petitioner missed or cancelled twelve of those twenty-two visits, three of which were due to bad weather. The DHHR worker also testified that petitioner had begun using illegal drugs with the child's mother, had failed or refused to submit to drug screens, and had committed domestic violence by reportedly "hit[ting] [the child's mother] several times, and . . . beating her face in." The DHHR worker noted that, while petitioner blamed much of his lack of cooperation with the DHHR on his work, he had never provided proof of his employment. In his testimony, petitioner maintained that he missed visits with the child largely due to his work schedule, but he admitted to relapsing into illegal drug use. Petitioner requested that the circuit court give him the opportunity to pursue drug treatment. At the conclusion of the hearing, the circuit court granted petitioner's request and continued the disposition to allow him to undergo in-patient drug treatment. The circuit court noted that petitioner must complete drug treatment, and petitioner stated that "[i]f you have a place for me to go, I'll go today."

In July of 2016, the circuit court held a final dispositional hearing. At that hearing, the DHHR moved to terminate petitioner's parental rights due to non-compliance with drug treatment or visits with the child. The DHHR argued that petitioner was unwilling or unable to participate in a reasonable case plan because he was offered a bed at an in-patient substance abuse treatment program, but he refused to attend that program. Petitioner made several admissions during this hearing: that he had not begun substance abuse treatment, as directed by the circuit court in April of 2016, although he claimed the treatment facility would not take him due to medical issues; that even after his alleged medical issues had resolved in June of 2016, he made no effort to seek drug treatment; that he "didn't follow up with" the intake requirements for drug treatment arranged by a DHHR worker through the county's day report center; that he chose not to seek drug treatment in April or May of 2016, which showed a "lack of participation on my part"; that he initially refused to go to the treatment facility until he received one more visit with the child; that he had cancelled more than one visit with the child since April of 2016, one of which he claimed to have cancelled for work; and that he attended approximately six or eight of the twelve scheduled visits with the child between April of 2016 and the final dispositional hearing in July of 2016.

At the conclusion of the hearing, the circuit court found that petitioner made no effort to comply with drug treatment, visitation with the child, or other parenting issues. Specifically, the circuit court noted that the proceedings had lasted more than one year and, during that time, petitioner's "participation has been sporadic with regards to visitation, sporadic with regards to parenting, and non-existence [sic] with regards to drug treatment." Based on those findings, the

---

[2]It is unclear from the record what substance petitioner tested positive for in February of 2015.

circuit court ruled that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and termination was in the child's best interests. As such, the circuit court terminated petitioner's parental rights to the child. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Petitioner's sole ground for appeal is that the circuit court committed plain error in terminating his parental rights to the child based on a finding that he failed to seek and receive substance abuse treatment when his substance abuse problem was not the basis of his adjudication and was not alleged in the underlying abuse and neglect petition. Petitioner asserts that because he was adjudicated for neglecting his child due to his incarceration, he corrected the condition of neglect when he was released from prison in or around late September of 2015. As such, petitioner claims that the circuit court's termination order erroneously relied upon his admitted drug use following his release from prison, and any allegations of his drug use should have been included in an amended petition in order to form the basis of his termination. We disagree.

It is clear from the record on appeal that the circuit court's termination of petitioner's parental rights was not based upon his substance abuse alone; the circuit court also found that petitioner missed substantial visits and showed only minimal improved parenting. At the final dispositional hearing, the circuit court noted that the case was pending for more than one year and, during that time, petitioner's "participation has been sporadic with regards to visitation,

sporadic with regards to parenting, and non-existence [sic] with regards to drug treatment."[3] This Court has explained "that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n.14, 479 S.E.2d 589, 600, n.14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). As we have relayed, the level of interest a parent shows in visiting a child who is out of the home is "an extremely significant factor for the circuit court to review" because "[a] parent who consistently demonstrates a desire to be with his child obviously has far more potential for being a nurturant and committed parent than one whose interest in being with his child is erratic." *In Interest of Carlita B.*, 185 W.Va. 613, 628, 408 S.E.2d 365, 380 (1991). Moreover, this Court has indicated that "parents who do not adequately provide for a child's needs and are not sufficiently motivated or organized to provide for such needs on an ongoing basis should have their parental rights terminated." *In re Brandon Lee B.*, 211 W.Va. 587, 591, 567 S.E.2d 597, 601 (2001) (citing *State v. Krystal T.*, 185 W.Va. 391, 407 S.E.2d 395 (1991)).

The child in this case lived outside of petitioner's home, and petitioner missed nearly half of his scheduled visits with the child from the time of his release from prison to the time of the final dispositional order. While petitioner argued that his work interfered with many of his visits, petitioner failed to provide any proof of his employment or work schedule to the DHHR or circuit court, and he failed to provide any explanation for several of his missed visits. The DHHR worker specifically testified that on several occasions she and the child arrived at the scheduled time and place for visits with petitioner, but, despite the child waiting for the visit, he failed to appear. Assuming the circuit court erred in relying on the issue of substance abuse to arrive at its final decision as petitioner alleges,

> [w]e have consistently held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Cumberland Chevrolet Oldsmobile Cadillac, Inc. v. General Motors Corp.*, 187 W.Va. 535, 538, 420 S.E.2d 295, 298 n. 4 (1992)(stating that "even if the reasoning of a trial court is in error . . . we are not bound by a trial court's erroneous reasoning")[.]

*State v. Boggess*, 204 W.Va. 267, 276, 512 S.E.2d 189, 198 (1998). Here, the circuit court properly considered petitioner's failure to regularly visit the child in its dispositional ruling, particularly in light of the fact that the underlying condition of neglect was petitioner's prolonged

---

[3]While the circuit court did not include these findings in its July 12, 2016, termination order, we may look to the transcript of the dispositional hearing to determine whether the circuit court made the requisite statutory findings. *See In re Jamie Nicole H.*, 205 W.Va. 176, 517 S.E.2d 41 (1999) (upholding termination of parental rights where transcript of dispositional hearing, rather than order of termination, satisfied Court that circuit court had made requisite findings).

absence from the child's life. As such, the circuit court's dispositional judgment was correct based on petitioner's continued failure to provide for or supervise this child throughout the child's entire life, or to otherwise establish a bonded, demonstrable parent-child relationship up to and including the time of disposition.

Further, we note that petitioner's substantial reliance on our decision in *In re Lilith H.*, 231 W.Va. 170, 744 S.E.2d 280 (2013), is misplaced. In that case, we took "notice of the plain error permeating the disposition wherein the circuit court terminated the parental rights on the basis of allegations and issues which were never properly made subject of the adjudication." *Id*. at 180, 744 S.E.2d at 290. However, unlike *Lilith H.*, petitioner in this case was adjudicated for being incarcerated for the child's entire life, which caused him to fail to provide for or supervise the child, and petitioner's parental rights were terminated based on his continued inability to provide for or supervise the child, as demonstrated, at a minimum, by his repeated missed visits. Therefore, in this case, petitioner failed to correct the condition of neglect by the time of disposition.

Based upon the evidence presented below, it is clear that the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future and that the child's best interests were served by termination. The condition of neglect was initially caused by petitioner's incarceration, but the record supports the conclusion that it continued even after his release from prison. Therefore, because West Virginia Code § 49-4-604(b)(6) directs circuit courts to terminate parental rights upon such findings, we find no error in the circuit court's termination order.

For the foregoing reasons, we find no error in the circuit court's July 12, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 21, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

5